1 | Sin-Ting Mary Liu (CA SBN 282884)
2 | Law Offices of Sin-Ting Mary Liu
    806 East Avenida Pico, Suite I-218
3 | San Clemente, CA 92673
    Tel: 949-342-4555
4 | Fax: 760-304-8933
    sintingmliu@gmail.com
5
6 | Attorney for Plaintiffs

**F I L E D**

San Francisco County Superior Court

JUN 25 2013

CLERK OF THE COURT

BY: _____
Deputy Clerk

7 | SUPERIOR COURT OF THE STATE OF CALIFORNIA
8 | IN AND FOR THE COUNTY OF SAN FRANCISCO

9

AUDIE DADUS, MAXINE DAVIS,
THEODORA DELEO, EMILIO DESIMONE,
AURELIO DIAZ, ROSALYN DORSEY-
FRANKLIN,
FLOZELL FIELDS, ANDREW FIORINI,
JAMES FLEMING, ALISON FLORNOY-
MINGO,
DANIEL FOSTER, ARTHUR GAUDET,
DORA GREEN, CARL HAGAN,
GEORGE HARLE, AMPARO HERNANDEZ,
VESTINE HESTER, THOMAS HILFERTY,
SHERRY HILLS, LILLIAN HOLLANDER,
JANICE HOPKINS, WILLIE HUNTER,
CAROL JENKS, LILLIE JOHNSON,
PATRICIA JOHNSON, JOEL KAIZER,
ROGER KESTEL, SHERRIE LAPORTE,
PATRICK LAUDERDAL, RICHARD
LITTLE,
JAMES MORGAN, GARY MUNTZ,
DELOURDES OQUENDO, KENNETH
PATTERSON,
MARY PEARSON, DONALD PEASE,
SHEENA PRICE, LENA RHYM,
MILLIE RICHARDSON, RANDOLPH RINZ,
CONSTANCE ROBINSON, JOSEPH
ROBINSON,
ROY RODGERS, WILLIAM ROGERS,
RODOLFO SANTAYA, DEBORA
SELVIDGE,
NATHAN SESSUM, DANIEL SHORT,
FRANCES STORY, EVELYN SWITECKI,

Case No. **C G C - 1 3 - 5 3 2 3 8 0**

**COMPLAINT FOR DAMAGES JURY TRIAL DEMAND**

1. Strict Products Liability – Design Defect
2. Strict Products Liability – Manufacturing Defect
3. Strict Products Liability – Failure to Warn
4. Negligence
5. Breach of Implied Warranty
6. Breach of Express Warranty
7. Deceit by Concealment – Ca. Civ. Code §§ 1709, 1710
8. Fraud
9. Fraud by Concealment
10. Negligent Misrepresentation
11. Wrongful Death
12. Survival Action
13. Loss of Consortium

**BY FAX**

1
Complaint for Damages

| | |
|---|---|
| VIRGINIA TAYLOR, MARGARET THORNTON, TOM TIORGETTI, JOAN TRADITI, CORDELLA TYRE, ROBERT WENSEL, JAMES WILLIAMS, NORRINE WILLIAMS, DOUGLAS YODER, GARRETT ANFIELD, LOUISE BOWDEN, JACK BROWN, ERNESTINE BUTTS, CHARLES CUMMINGS, JUDITH ETHERIDGE, DIXIE GANN, EDWARD GREEN, DOROTHY HARRIS, THOMAS JAMES, DEBORAH MARTIN, RONALD MENTZER, LYNETTE ROBINSON, KATHY SANCHEZ, LARRY SHERWOOD, MARGARET WILKERSON, CHARLES BRUMLEY, WALTER NEWSOM, ZUBEDA AHMED, RONALD BROWN, ALLAN BURKE, MELVIN CHANEY, EDWARD COTTON, RUSSELL DUNN, VERNE HARRIS, SAMUEL HUNT, ESTHER NEWSOME, MARY SMITH, FRED THOMAS, CARL WATKINS, TIMOTHY WHALEN, GENEVA CLEMENS<br><br>                        Plaintiffs,<br><br>vs.<br><br>McKESSON CORPORATION, a corporation, SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, and DOES 1 THROUGH 100, Inclusive,<br><br>                        Defendants, | |

2

Complaint for Damages

EXHIBIT A, Page 17

COME NOW Plaintiffs, and each of them, and complain and allege against Defendants, Does 1 through 100, and each of them as follows:

## GENERAL ALLEGATIONS

1.      This action involves claims of death, personal injury, economic damages, punitive damages, and other claims of damage arising from the use of Rosiglitazone, a pharmaceutical compound researched, designed, formulated, compounded, tested, manufactured, produced, processed, assembled, inspected, distributed, marketed, labeled, promoted, packaged, advertised for sale, prescribed or otherwise placed in the stream of interstate commerce by Defendant SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, ("GSK") under the trade names Avandia, Avandamet, and Avandaryl (hereinafter collectively referred to as "Avandia") and marketed, sold, and distributed by Defendant MCKESSON CORPORATION ("McKesson") and is brought on behalf of the named plaintiffs, collectively referred to herein as "Plaintiffs". This action seeks, among other relief, general and special damages and equitable relief in order to enable the living Plaintiffs who ingested Avandia to treat and monitor the dangerous, severe and life threatening side effects caused by this drug, including but not limited to heart attacks and congestive heart failure, stokes and other injuries.

2.      Avandia is a member of a class of drugs known as Thiazolidinediones (TZD's) and is used in the treatment of persons with Type 2 Diabetes. Defendants negligently and intentionally misrepresented that Avandia was safe and effective, when in fact it was causing and contributing to serious cardiovascular events, including, but not limited to, heart attacks and congestive heart failure. Plaintiffs' and/or Plaintiffs' decedents all ingested Avandia and suffered injury as a result.

3.      The true names or capacities whether individual, corporate or otherwise, of Defendants Does 1 through 100, inclusive, are unknown to Plaintiffs who therefore, pursuant to *California Code of Civil Procedure* §474, sue said Defendants by such fictitious names. Plaintiffs believe and allege that each of the Defendants designated herein by fictitious names

3
Complaint for Damages

is in some manner legally responsible for the events and happenings herein referred to and caused damages proximately and foreseeably to Plaintiffs as alleged herein.

4.    Plaintiffs will ask leave to amend this Complaint to state said Defendants' true identities and capacities when the same has been ascertained.

5.    Plaintiffs are informed and believe and based thereupon allege that each of the Defendants in all matters referred to herein was in some manner responsible for the injuries and losses suffered by the Plaintiff.

6.    Plaintiffs are informed and believe and based thereupon allege that at all times herein mentioned, each of the Defendants was the agent, servant, and/or employee or occupied other relationships with each of the other named Defendants and at all times herein mentioned acted within the course and scope of said agency and/or employment and/or other relationship and each other Defendant has ratified, consented to, and approved the acts of his agents, employees, and representatives, and that each actively participated in, aided and abetted, or assisted one another in the commission of the wrongdoing alleged in this Complaint.

7.    At all times herein mentioned, each of the Defendants was the agent, servant, partner, aider and abettor, co-conspirator and joint venturer of each of the remaining Defendants herein and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture and rendered substantial assistance and encouragement to the other Defendants, knowing that their conduct constituted a breach of duty.

8.    There exists, and at all times herein mentioned, there existed, a unity of interest in ownership between certain Defendants and other certain Defendants such that any individuality and separateness between the certain Defendants has ceased and these Defendants are the alter ego of the other certain Defendant, and exerted control over those Defendants. Adherence to the fiction of the separate existence of these certain Defendants as any entity distinct from other certain Defendants will permit an abuse of the corporate privilege and would sanction fraud and would promote injustice.

9.    The injuries and damages to Plaintiffs were caused by the wrongful acts,

4
Complaint for Damages

omissions, and fraudulent representations of Defendants, many of which occurred within the State of California.

10. At all times herein mentioned, Defendants were each engaged in the business of, or were successors in interest to, entities engaged in the business of research, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging and/or advertising for sale or selling the drug Avandia.

11. At all times herein mentioned, Defendants were each authorized to do business within the State of California and did in fact supply the aforementioned products within the State of California.

12. At all times herein mentioned, the officers and directors of Defendants authorized and directed the production and promotion of the aforementioned products when they knew, or with the exercise of reasonable care should have known, of the hazards and dangerous propensities of said products, and thereby actively participated in the tortious conduct which resulted in the physical injuries described herein.

## JURISDICTION AND VENUE

13. Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned each of the Defendants hereto are individuals, corporations, partnerships and/or unincorporated associations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said Defendants, and each of them, were and are authorized to do and are doing business in the State of California, or the laws of some other state or foreign jurisdiction, and that said Defendants, and each of them, were and are authorized to do and are doing business in the State of California, and that said Defendants have regularly conducted business in the County of San Francisco, State of California.

14. Venue is proper in this county because at least one Defendant, McKesson Corporation, has its principal place of business in the County of San Francisco, State of California.

5
Complaint for Damages

**PLAINTIFFS**

15.   AUDIE DADUS is a natural person currently residing in Florida. AUDIE DADUS was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. AUDIE DADUS was unaware the injuries were caused by Avandia until within two years of filing this complaint.

16.   MAXINE DAVIS is a natural person currently residing in Florida. MAXINE DAVIS was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. MAXINE DAVIS was unaware the injuries were caused by Avandia until within two years of filing this complaint.

17.   THEODORA DELEO is a natural person currently residing in Florida. THEODORA DELEO was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. THEODORA DELEO was unaware the injuries were caused by Avandia until within two years of filing this complaint.

18.   EMILIO DESIMONE is a natural person currently residing in Florida. EMILIO DESIMONE was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. EMILIO DESIMONE was unaware the injuries were caused by Avandia until within two years of filing this complaint.

19.   AURELIO DIAZ is a natural person currently residing in Florida. AURELIO DIAZ was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. AURELIO DIAZ was unaware the injuries were caused by Avandia until within two years of filing this complaint.

20.   ROSALYN DORSEY-FRANKLIN is a natural person currently residing in Florida. ROSALYN DORSEY-FRANKLIN was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. ROSALYN DORSEY-FRANKLIN was unaware the injuries were caused by Avandia until within two years of filing this complaint.

21.   FLOZELL FIELDS is a natural person currently residing in Florida. FLOZELL FIELDS was prescribed and ingested Avandia and, as a result, suffered severe physical,

6
Complaint for Damages

economic and emotional injuries. FLOZELL FIELDS was unaware the injuries were caused by Avandia until within two years of filing this complaint.

22. ANDREW FIORINI is a natural person currently residing in Florida. ANDREW FIORINI was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. ANDREW FIORINI was unaware the injuries were caused by Avandia until within two years of filing this complaint.

23. JAMES FLEMING is a natural person currently residing in Florida. JAMES FLEMING was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. JAMES FLEMING was unaware the injuries were caused by Avandia until within two years of filing this complaint.

24. ALISON FLORNOY-MINGO is a natural person currently residing in Florida. ALISON FLORNOY-MINGO was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. ALISON FLORNOY-MINGO was unaware the injuries were caused by Avandia until within two years of filing this complaint.

25. DANIEL FOSTER is a natural person currently residing in Florida. DANIEL FOSTER was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. DANIEL FOSTER was unaware the injuries were caused by Avandia until within two years of filing this complaint.

26. ARTHUR GAUDET is a natural person currently residing in Florida. ARTHUR GAUDET was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. ARTHUR GAUDET was unaware the injuries were caused by Avandia until within two years of filing this complaint.

27. DORA GREEN is a natural person currently residing in Florida. DORA GREEN was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. DORA GREEN was unaware the injuries were caused by Avandia until within two years of filing this complaint.

28. CARL HAGAN is a natural person currently residing in Florida. CARL HAGAN was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and

EXHIBIT A, Page 22

emotional injuries. CARL HAGAN was unaware the injuries were caused by Avandia until within two years of filing this complaint.

29. GEORGE HARLE is a natural person currently residing in Florida. GEORGE HARLE was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. GEORGE HARLE was unaware the injuries were caused by Avandia until within two years of filing this complaint.

30. AMPARO HERNANDEZ is a natural person currently residing in Florida. AMPARO HERNANDEZ was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. AMPARO HERNANDEZ was unaware the injuries were caused by Avandia until within two years of filing this complaint.

31. VESTINE HESTER is a natural person currently residing in Florida. VESTINE HESTER was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. VESTINE HESTER was unaware the injuries were caused by Avandia until within two years of filing this complaint.

32. THOMAS HILFERTY is a natural person currently residing in Florida. THOMAS HILFERTY was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. THOMAS HILFERTY was unaware the injuries were caused by Avandia until within two years of filing this complaint.

33. SHERRY HILLS is a natural person currently residing in Florida. SHERRY HILLS was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. SHERRY HILLS was unaware the injuries were caused by Avandia until within two years of filing this complaint.

34. LILLIAN HOLLANDER is a natural person currently residing in Florida. LILLIAN HOLLANDER was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. LILLIAN HOLLANDER was unaware the injuries were caused by Avandia until within two years of filing this complaint.

35. JANICE HOPKINS is a natural person currently residing in Florida. JANICE HOPKINS was prescribed and ingested Avandia and, as a result, suffered severe physical,

economic and emotional injuries. JANICE HOPKINS was unaware the injuries were caused by Avandia until within two years of filing this complaint.

36.     WILLIE HUNTER is a natural person currently residing in Florida. WILLIE HUNTER was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. WILLIE HUNTER was unaware the injuries were caused by Avandia until within two years of filing this complaint.

37.     CAROL JENKS is a natural person currently residing in Florida. CAROL JENKS was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. CAROL JENKS was unaware the injuries were caused by Avandia until within two years of filing this complaint.

38.     LILLIE JOHNSON is a natural person currently residing in Florida. LILLIE JOHNSON was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. LILLIE JOHNSON was unaware the injuries were caused by Avandia until within two years of filing this complaint.

39.     PATRICIA JOHNSON is a natural person currently residing in Florida. PATRICIA JOHNSON was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. PATRICIA JOHNSON was unaware the injuries were caused by Avandia until within two years of filing this complaint.

40.     JOEL KAIZER is a natural person currently residing in Florida. JOEL KAIZER was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. JOEL KAIZER was unaware the injuries were caused by Avandia until within two years of filing this complaint.

41.     ROGER KESTEL is a natural person currently residing in Florida. ROGER KESTEL was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. ROGER KESTEL was unaware the injuries were caused by Avandia until within two years of filing this complaint.

42.     SHERRIE LAPORTE is a natural person currently residing in Florida. SHERRIE LAPORTE was prescribed and ingested Avandia and, as a result, suffered severe physical,

9
Complaint for Damages

economic and emotional injuries. SHERRIE LAPORTE was unaware the injuries were caused by Avandia until within two years of filing this complaint.

43. PATRICK LAUDERDAL is a natural person currently residing in Florida. PATRICK LAUDERDAL was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. PATRICK LAUDERDAL was unaware the injuries were caused by Avandia until within two years of filing this complaint.

44. RICHARD LITTLE is a natural person currently residing in Florida. RICHARD LITTLE was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. RICHARD LITTLE was unaware the injuries were caused by Avandia until within two years of filing this complaint.

45. JAMES MORGAN is a natural person currently residing in Florida. JAMES MORGAN was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. JAMES MORGAN was unaware the injuries were caused by Avandia until within two years of filing this complaint.

46. GARY MUNTZ is a natural person currently residing in Florida. GARY MUNTZ was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. GARY MUNTZ was unaware the injuries were caused by Avandia until within two years of filing this complaint.

47. DELOURDES OQUENDO is a natural person currently residing in Florida. DELOURDES OQUENDO was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. DELOURDES OQUENDO was unaware the injuries were caused by Avandia until within two years of filing this complaint.

48. KENNETH PATTERSON is a natural person currently residing in Florida. KENNETH PATTERSON was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. KENNETH PATTERSON was unaware the injuries were caused by Avandia until within two years of filing this complaint.

49. MARY PEARSON is a natural person currently residing in Florida. MARY PEARSON was prescribed and ingested Avandia and, as a result, suffered severe physical,

10
Complaint for Damages

economic and emotional injuries. MARY PEARSON was unaware the injuries were caused by Avandia until within two years of filing this complaint.

50.     DONALD PEASE is a natural person currently residing in Florida. DONALD PEASE was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. DONALD PEASE was unaware the injuries were caused by Avandia until within two years of filing this complaint.

51.     SHEENA PRICE is a natural person currently residing in Florida. SHEENA PRICE was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. SHEENA PRICE was unaware the injuries were caused by Avandia until within two years of filing this complaint.

52.     LENA RHYM is a natural person currently residing in Florida. LENA RHYM was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. LENA RHYM was unaware the injuries were caused by Avandia until within two years of filing this complaint.

53.     MILLIE RICHARDSON is a natural person currently residing in Florida. MILLIE RICHARDSON was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. MILLIE RICHARDSON was unaware the injuries were caused by Avandia until within two years of filing this complaint.

54.     RANDOLPH RINZ is a natural person currently residing in Florida. RANDOLPH RINZ was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. RANDOLPH RINZ was unaware the injuries were caused by Avandia until within two years of filing this complaint.

55.     CONSTANCE ROBINSON is a natural person currently residing in Florida. CONSTANCE ROBINSON was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. CONSTANCE ROBINSON was unaware the injuries were caused by Avandia until within two years of filing this complaint.

56.     JOSEPH ROBINSON is a natural person currently residing in Florida. JOSEPH ROBINSON was prescribed and ingested Avandia and, as a result, suffered severe physical,

11
Complaint for Damages

EXHIBIT A, Page 26

economic and emotional injuries. JOSEPH ROBINSON was unaware the injuries were caused by Avandia until within two years of filing this complaint.

57.     ROY RODGERS is a natural person currently residing in Florida. ROY RODGERS was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. ROY RODGERS was unaware the injuries were caused by Avandia until within two years of filing this complaint.

58.     WILLIAM ROGERS is a natural person currently residing in Florida. WILLIAM ROGERS was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. WILLIAM ROGERS was unaware the injuries were caused by Avandia until within two years of filing this complaint.

59.     RODOLFO SANTAYA is a natural person currently residing in Florida. RODOLFO SANTAYA was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. RODOLFO SANTAYA was unaware the injuries were caused by Avandia until within two years of filing this complaint.

60.     DEBORA SELVIDGE is a natural person currently residing in Florida. DEBORA SELVIDGE was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. DEBORA SELVIDGE was unaware the injuries were caused by Avandia until within two years of filing this complaint.

61.     NATHAN SESSUM is a natural person currently residing in Florida. NATHAN SESSUM was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. NATHAN SESSUM was unaware the injuries were caused by Avandia until within two years of filing this complaint.

62.     DANIEL SHORT is a natural person currently residing in Florida. DANIEL SHORT was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. DANIEL SHORT was unaware the injuries were caused by Avandia until within two years of filing this complaint.

63.     FRANCES STORY is a natural person currently residing in Florida. FRANCES STORY was prescribed and ingested Avandia and, as a result, suffered severe physical,

12
Complaint for Damages

economic and emotional injuries. FRANCES STORY was unaware the injuries were caused by Avandia until within two years of filing this complaint.

64. EVELYN SWITECKI is a natural person currently residing in Florida. EVELYN SWITECKI was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. EVELYN SWITECKI was unaware the injuries were caused by Avandia until within two years of filing this complaint.

65. VIRGINIA TAYLOR is a natural person currently residing in Florida. VIRGINIA TAYLOR was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. VIRGINIA TAYLOR was unaware the injuries were caused by Avandia until within two years of filing this complaint.

66. MARGARET THORNTON is a natural person currently residing in Florida. MARGARET THORNTON was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. MARGARET THORNTON was unaware the injuries were caused by Avandia until within two years of filing this complaint.

67. TOM TIORGETTI is a natural person currently residing in Florida. TOM TIORGETTI was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. TOM TIORGETTI was unaware the injuries were caused by Avandia until within two years of filing this complaint.

68. JOAN TRADITI is a natural person currently residing in Florida. JOAN TRADITI was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. JOAN TRADITI was unaware the injuries were caused by Avandia until within two years of filing this complaint.

69. CORDELLA TYRE is a natural person currently residing in Florida. CORDELLA TYRE was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. CORDELLA TYRE was unaware the injuries were caused by Avandia until within two years of filing this complaint.

70. ROBERT WENSEL is a natural person currently residing in Florida. ROBERT WENSEL was prescribed and ingested Avandia and, as a result, suffered severe physical,

economic and emotional injuries. ROBERT WENSEL was unaware the injuries were caused by Avandia until within two years of filing this complaint.

71.     JAMES WILLIAMS is a natural person currently residing in Florida. JAMES WILLIAMS was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. JAMES WILLIAMS was unaware the injuries were caused by Avandia until within two years of filing this complaint.

72.     NORRINE WILLIAMS is a natural person currently residing in Florida. NORRINE WILLIAMS was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. NORRINE WILLIAMS was unaware the injuries were caused by Avandia until within two years of filing this complaint.

73.     DOUGLAS YODER is a natural person currently residing in Florida. DOUGLAS YODER was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. DOUGLAS YODER was unaware the injuries were caused by Avandia until within two years of filing this complaint.

74.     GARRETT ANFIELD is a natural person currently residing in Georgia. GARRETT ANFIELD was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. GARRETT ANFIELD was unaware the injuries were caused by Avandia until within two years of filing this complaint.

75.     LOUISE BOWDEN is a natural person currently residing in Georgia. LOUISE BOWDEN was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. LOUISE BOWDEN was unaware the injuries were caused by Avandia until within two years of filing this complaint.

76.     JACK BROWN is a natural person currently residing in Georgia. JACK BROWN was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. JACK BROWN was unaware the injuries were caused by Avandia until within two years of filing this complaint.

77.     ERNESTINE BUTTS is a natural person currently residing in Georgia. ERNESTINE BUTTS was prescribed and ingested Avandia and, as a result, suffered severe

physical, economic and emotional injuries. ERNESTINE BUTTS was unaware the injuries were caused by Avandia until within two years of filing this complaint.

78. CHARLES CUMMINGS is a natural person currently residing in Georgia. CHARLES CUMMINGS was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. CHARLES CUMMINGS was unaware the injuries were caused by Avandia until within two years of filing this complaint.

79. JUDITH ETHERIDGE is a natural person currently residing in Georgia. JUDITH ETHERIDGE was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. JUDITH ETHERIDGE was unaware the injuries were caused by Avandia until within two years of filing this complaint.

80. DIXIE GANN is a natural person currently residing in Georgia. DIXIE GANN was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. DIXIE GANN was unaware the injuries were caused by Avandia until within two years of filing this complaint.

81. EDWARD GREEN is a natural person currently residing in Georgia. EDWARD GREEN was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. EDWARD GREEN was unaware the injuries were caused by Avandia until within two years of filing this complaint.

82. DOROTHY HARRIS is a natural person currently residing in Georgia. DOROTHY HARRIS was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. DOROTHY HARRIS was unaware the injuries were caused by Avandia until within two years of filing this complaint.

83. THOMAS JAMES is a natural person currently residing in Georgia. THOMAS JAMES was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. THOMAS JAMES was unaware the injuries were caused by Avandia until within two years of filing this complaint.

84. DEBORAH MARTIN is a natural person currently residing in Georgia. DEBORAH MARTIN was prescribed and ingested Avandia and, as a result, suffered severe

physical, economic and emotional injuries. DEBORAH MARTIN was unaware the injuries were caused by Avandia until within two years of filing this complaint.

85. RONALD MENTZER is a natural person currently residing in Georgia. RONALD MENTZER was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. RONALD MENTZER was unaware the injuries were caused by Avandia until within two years of filing this complaint.

86. LYNETTE ROBINSON is a natural person currently residing in Georgia. LYNETTE ROBINSON was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. LYNETTE ROBINSON was unaware the injuries were caused by Avandia until within two years of filing this complaint.

87. KATHY SANCHEZ is a natural person currently residing in Georgia. KATHY SANCHEZ was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. KATHY SANCHEZ was unaware the injuries were caused by Avandia until within two years of filing this complaint.

88. LARRY SHERWOOD is a natural person currently residing in Georgia. LARRY SHERWOOD was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. LARRY SHERWOOD was unaware the injuries were caused by Avandia until within two years of filing this complaint.

89. MARGARET WILKERSON is a natural person currently residing in Georgia. MARGARET WILKERSON was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. MARGARET WILKERSON was unaware the injuries were caused by Avandia until within two years of filing this complaint.

90. CHARLES BRUMLEY is a natural person currently residing in Idaho. CHARLES BRUMLEY was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. CHARLES BRUMLEY was unaware the injuries were caused by Avandia until within two years of filing this complaint.

91. WALTER NEWSOM is a natural person currently residing in Idaho. WALTER NEWSOM was prescribed and ingested Avandia and, as a result, suffered severe physical,

16
Complaint for Damages

economic and emotional injuries. WALTER NEWSOM was unaware the injuries were caused by Avandia until within two years of filing this complaint.

92.     ZUBEDA AHMED is a natural person currently residing in Illinois. ZUBEDA AHMED was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. ZUBEDA AHMED was unaware the injuries were caused by Avandia until within two years of filing this complaint.

93.     RONALD BROWN is a natural person currently residing in Illinois. RONALD BROWN was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. RONALD BROWN was unaware the injuries were caused by Avandia until within two years of filing this complaint.

94.     ALLAN BURKE is a natural person currently residing in Illinois. ALLAN BURKE was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. ALLAN BURKE was unaware the injuries were caused by Avandia until within two years of filing this complaint.

95.     MELVIN CHANEY is a natural person currently residing in Illinois. MELVIN CHANEY was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. MELVIN CHANEY was unaware the injuries were caused by Avandia until within two years of filing this complaint.

96.     EDWARD COTTON is a natural person currently residing in Illinois. EDWARD COTTON was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. EDWARD COTTON was unaware the injuries were caused by Avandia until within two years of filing this complaint.

97.     RUSSELL DUNN is a natural person currently residing in Illinois. RUSSELL DUNN was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. RUSSELL DUNN was unaware the injuries were caused by Avandia until within two years of filing this complaint.

98.     VERNE HARRIS is a natural person currently residing in Illinois. VERNE HARRIS was prescribed and ingested Avandia and, as a result, suffered severe physical,

EXHIBIT A, Page 32

economic and emotional injuries. VERNE HARRIS was unaware the injuries were caused by Avandia until within two years of filing this complaint.

99.    SAMUEL HUNT is a natural person currently residing in Illinois. SAMUEL HUNT was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. SAMUEL HUNT was unaware the injuries were caused by Avandia until within two years of filing this complaint.

100.    ESTHER NEWSOME is a natural person currently residing in Illinois. ESTHER NEWSOME was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. ESTHER NEWSOME was unaware the injuries were caused by Avandia until within two years of filing this complaint.

101.    MARY SMITH is a natural person currently residing in Illinois. MARY SMITH was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. MARY SMITH was unaware the injuries were caused by Avandia until within two years of filing this complaint.

102.    FRED THOMAS is a natural person currently residing in Illinois. FRED THOMAS was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. FRED THOMAS was unaware the injuries were caused by Avandia until within two years of filing this complaint.

103.    CARL WATKINS is a natural person currently residing in Illinois. CARL WATKINS was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. CARL WATKINS was unaware the injuries were caused by Avandia until within two years of filing this complaint.

104.    TIMOTHY WHALEN is a natural person currently residing in Illinois. TIMOTHY WHALEN was prescribed and ingested Avandia and, as a result, suffered severe physical, economic and emotional injuries. TIMOTHY WHALEN was unaware the injuries were caused by Avandia until within two years of filing this complaint.

105.    GENEVA CLEMENS is a natural person currently residing in Indiana. GENEVA CLEMENS was prescribed and ingested Avandia and, as a result, suffered severe

18
Complaint for Damages

physical, economic and emotional injuries. GENEVA CLEMENS was unaware the injuries were caused by Avandia until within two years of filing this complaint.

106.  As used herein, "Ingesting Plaintiffs" shall mean to refer to the plaintiffs identified herein as someone who was prescribed and ingested Avandia.

107.  As used herein, "Spouse Plaintiffs" shall mean to refer to the plaintiffs identified herein as the spouse of someone who was prescribed and ingested Avandia.

108.  As for plaintiffs identified herein as successors-in-interest of a decedent's estate, they bring any and all Survival Causes of Action pursuant to Sections 377.30 and 377.32 of the Code of Civil Procedure. As used herein, "Survival Plaintiffs" shall refer to these plaintiffs.

109.  As for all plaintiffs identified as heirs, they bring any and all Wrongful Death Causes of Action pursuant to Section 377.60 of the Code of Civil Procedure. As used herein, "Heirs" shall refer to these plaintiffs.

<div align="center">

**DEFENDANTS**

</div>

110.  Defendant McKesson Corporation is a pharmaceutical distribution and marketing company organized and existing under the laws of the State of Delaware, with its headquarters at One Post Street, San Francisco, California 94104.

111.  Defendant SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, a Pennsylvania corporation was, and still is, a corporation duly existing under and by virtue of the laws of the State of Pennsylvania with its principal place of business in Philadelphia, Pennsylvania.

112.  When referring collectively to all Defendants in this action, Plaintiffs will use the term "Defendants".

<div align="center">

**FACTUAL ALLEGATIONS**

</div>

113.  This is an action for injuries and damages suffered by Plaintiffs, and each of them, as a direct and proximate result of the Defendants' negligent and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distribution, labeling, and/or sale of Avandia.

114.  Avandia was designed, developed, manufactured, tested, labeled, packaged,

<div align="center">

19
Complaint for Damages

</div>

promoted, marketed, distributed, and/or sold by Defendants.

115. At all times relevant hereto, the Defendants have directly marketed and distributed Avandia to the medical community.

116. At all times relevant hereto, the Defendants, have directly marketed Avandia to the consuming public throughout the United States, including the Plaintiffs, herein.

117. At all times relevant hereto, Defendant McKesson distributed and marketed Avandia to the consuming public, including the Plaintiffs, herein.

118. At all times relevant hereto, Defendant McKesson was the largest drug distributor in the United States, and, among the largest distributors of Avandia in the United States.

119. Upon information and belief, Defendant McKesson distributed the Avandia that Plaintiffs ingested.

120. In May 1999, Defendant GSK sought and obtained Food and Drug Administration ("FDA") approval to market a drug manufactured, designed, distributed and sold by Defendants to diabetics purported to increase insulin sensitivity without causing serious effects, harm or injury.

121. Defendants, as a result of strenuous marketing of said drug Avandia, were able to capture a significant share of the market and generate billions of dollars in income and profit as a consequence.

122. Defendants have continued to reap substantial profits from said drug, Avandia, from May of 1999 to the present. By at least September 2005, Defendants knew (upon information and belief), but had not disclosed, evidence from studies conducted from 1999 through 2005 that demonstrated adverse cardiac events in consumers attributable to the drug. Although Defendants had an analysis of 42 patient studies of Avandia, it failed to disclose the full results of the study to the FDA, doctors, and patients. The complete results of the study were not provided to the FDA for another year.

123. During the year 2006, after the time the Defendants were aware of the study results, Defendants increased their sales of Avandia to a distribution of approximately 13

20
Complaint for Damages

(thirteen) million prescriptions in the United States. By way of example, in 2006 a one month's supply of Avandia cost between $90 and $200. Thereby, Defendants were able to generate sales of $2.2 billion of this drug in 2006.

124. At all relevant times herein, Avandia was widely advertised by the Defendants as an effective and safe treatment for diabetic patients. Said Defendants minimized the risks posed to diabetic patients by ingestion of Avandia. In August 2006, for the first time and as a result of external pressure, Defendant GSK disclosed results of the study (referenced in paragraph 9 above) even though the Defendants were fully aware of adverse cardiac events due to the drug Avandia by at least September 2005. Said Defendants concealed and minimized the known risks to diabetic patients from ingesting Avandia.

125. In doing so, the Defendants concealed the known risks to diabetic patients and failed to warn of known and/or scientifically knowable dangers and risks associated with ingestion of Avandia.

126. At all relevant times herein, Plaintiffs and/or decedents were prescribed, and ingested Avandia. As set out above, Defendants knew that the product was unsafe for diabetic patients in general, and was capable of causing and did cause adverse cardiac events in exposed patients. In spite of the knowledge of the dangerous characteristics of said drug, and with conscious disregard for the health and safety of the public and of exposed patients who were prescribed and took Avandia, Defendants placed said drug on the market intending it to be sold to and used by diabetic patients, knowing that said use would occur.

127. Defendants continued the sale of Avandia after the preliminary disclosure to the FDA in August 2006. Knowing that its drug caused adverse cardiac events, heart attacks and strokes and that the diabetic patient population was not informed of the dangers, Defendants continued to expand sales of Avandia to existing and new patients.

128. On May 21, 2007, Dr. Steven Nissen, a prominent cardiologist associated with the Cleveland Clinic, published a study in the New England Journal of Medicine with his analysis of the 42 studies conducted since 1999. Dr. Nissen's study disclosed the increased risk

<div align="center">21<br>Complaint for Damages</div>

of congestive heart failure and heart attack by patients taking Avandia, dangers the Defendant, had been aware of since at least 2005 and possibly before, yet Defendants still failed to disclose to patients and their physicians the true dangers of adverse cardiac events caused by ingestion of the drug Avandia.

129.     At all times relevant herein, Defendants failed to provide sufficient warnings and instructions that would have put Plaintiffs and/or decedents and the general public on notice of the dangers and adverse effects caused by ingesting Avandia including, without limitation, risk of heart attack, congestive heart failure, and stroke.

130.     Avandia as designed, manufactured, distributed, sold and/or supplied by Defendants, was defective as marketed, due to inadequate warnings, instructions, labeling and/or inadequate testing in the presence of Defendants' knowledge of lack of cardiovascular safety.

131.     Defendants thereby acted with fraud, malice, oppression and a conscious disregard for Plaintiffs' and/or decedents' and the general public's safety.     Plaintiffs accordingly request that the trier of fact, in the exercise of sound discretion, award additional damages for the sake of example and for the purpose of punishing the Defendants for their conduct, in an amount sufficiently large to be an example to others and to deter the Defendants and others from engaging in similar conduct in the future.  The aforesaid wrongful conduct was done with the advance knowledge, authorization, and/or ratification of an officer, director, and/or managing agent of Defendants.

## FRAUDULENT CONCEALMENT

132.     Any applicable statute of limitations have been tolled by the knowing and active concealment and denial of facts as alleged herein by the Defendants.   Plaintiffs and/or decedents have been kept in ignorance of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part.  Plaintiffs and/or decedents could not have reasonably discovered the dangerous nature and unreasonable adverse side effects associated with Avandia.

EXHIBIT A, Page 37

133. Defendants are and were under a continuing duty to disclose the true character, quality and nature of their drug to Plaintiffs and/or decedents. Because of their concealment of the true character, quality and nature of their medication, Defendants are estopped from relying on any statute of limitations defense.

## FIRST CAUSE OF ACTION

### *Strict Products Liability – Design Defect*

134. Ingesting Plaintiffs, Survival Plaintiffs and Heir Plaintiffs hereby incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further alleges as to Defendants, Does 1 through 100, and each of them, as follows:

135. The Avandia manufactured and supplied by Defendants was defective and unsafe for its intended purpose in that the ingestion of Avandia causes serious injuries and/or death. The defect existed in said product at the time it left the possession of the Defendants and each of them. Said product did, in fact, cause personal injuries as described herein while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe, and dangerous for use.

136. The Avandia manufactured and supplied by Defendants was placed into the stream of commerce by Defendants in a defective and unreasonably dangerous condition in that the foreseeable risks exceeded the benefits associated with the design or formulation.

137. Alternatively, the Avandia manufactured and supplied by Defendants was defective in design or formulation in that when it was placed in the stream of commerce in that it failed to perform as safely as an ordinary consumer would expect and was more dangerous than other anticoagulant therapies.

138. The Avandia manufactured and supplied by Defendants was also defective due to inadequate warning or instruction because the Defendants knew or should have known that the product created a serious risk of harm to consumers and Defendants failed to adequately warn consumers of said risks, including Ingesting Plaintiffs and Decedents.

23
Complaint for Damages

139.     Defendants, and each of them, knew and intended that Avandia would be used by the ordinary purchaser or user without inspection for defects therein and without knowledge of the hazards involved in such use.

140.     The Avandia manufactured and supplied by Defendants was defective due to inadequate warning and inadequate testing.

141.     The Avandia manufactured and supplied by Defendants was defective due to inadequate post-market warnings and instructions, because Defendants knew or should have known of the risk of serious injury from Avandia, however said Defendants failed to provide adequate warnings to users and consumers of the product, including Ingesting Plaintiffs and Decedents, and continued to promote the product.

142.     On or before all times relevant to this matter, Defendants, and each of them, were aware that members of the general public, including Ingesting Plaintiffs and Decedents, who would ingest their product had no knowledge or information indicating that use of their product could cause injury, and said Defendants, and each of them, knew that members of the general public, including Ingesting Plaintiffs and Decedents, who used their product, would assume, and in fact did assume, that said use was safe, when in fact said use was extremely hazardous to health and human life.

143.     With said knowledge, said Defendants, and each of them, opted to manufacture, design, label, distribute, offer for sale, supply, sell, package, and advertise said product without attempting to protect said product users from, or warn of, the high risk of injury or death resulting from its use.

144.     Rather than attempting to protect users from, or warn them of, the high risk of injury or death resulting from use of their product, Defendants, and each of them, intentionally failed to reveal their knowledge of said risk, failed to warn of said risk and consciously and actively concealed and suppressed said knowledge from members of the general public, including Ingesting Plaintiffs and Decedents, thus impliedly representing to members of the general public that Avandia was safe for all reasonably foreseeable uses.

<div align="center">24<br>Complaint for Damages</div>

145. The above-referenced conduct of said Defendants, and each of them, was motivated by the financial interest of said Defendants, in the continuing, uninterrupted manufacture, supply, sale, marketing, packaging and advertising of Avandia.

146. In pursuance of said financial motivation, Defendants, and each of them, consciously disregarded the safety of users of their product and in fact were consciously willing and intended to permit Avandia to cause injury to users and induced persons to purchase and use Avandia, including Plaintiffs herein.

147. Defendants, their "alternate entities," and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

148. The herein-described conduct of said Defendants, and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of the users of their product. Ingesting Plaintiffs and the Plaintiffs' representing the interests of Decedent's estates, for the sake of example and by way of punishing said defendants, seeks punitive damages according to proof.

149. As a proximate and legal result of the defective and unreasonably dangerous condition of Avandia tested, manufactured and supplied by Defendants, and the lack of adequate use instructions and warnings, Decedents were cause injury and death and Plaintiffs were caused to suffer and will continue to suffer the herein described injuries and damages.

150. WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## SECOND CAUSE OF ACTION

### *Strict Products Liability – Manufacturing Defect*

151. Ingesting Plaintiffs, Survival Plaintiffs and Heir Plaintiffs hereby incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as to Defendants, Does 1 through 100, and each of them, as follows:

152. At all times herein mentioned, Defendants' Avandia products were prescribed

<div align="center">25<br>Complaint for Damages</div>

1 │ and used as intended by Defendants and in a manner reasonably foreseeable to Defendants.

2 │ 153. The Avandia products were defective at the time of their manufacture,

3 │ development, production, testing, inspection, endorsement, prescription, sale and distribution,

4 │ and at the time they left the possession of the Defendants, in that, and not by way of limitation,

5 │ the products differed from the Defendants' intended result and intended design and

6 │ specifications, and from other ostensibly identical units of the same product line.

7 │ 154. As a proximate and legal result of the defective condition of the Avandia,

8 │ Decedents were cause injury and death and Plaintiffs were caused to suffer and will continue to

9 │ suffer the herein described injuries and damages.

10 │ 155. WHEREFORE, said Plaintiffs pray for judgment against Defendants as

11 │ hereinafter set forth.

12 │ ### THIRD CAUSE OF ACTION

13 │ *Strict Products Liability – Failure to Warn*

14 │ 156. Ingesting Plaintiffs, Survival Plaintiffs and Heir Plaintiffs hereby incorporate by

15 │ reference, as if fully set forth herein, each and every allegation contained in previous

16 │ paragraphs of this Complaint as to Defendants, Does 1 through 100, and each of them, as

17 │ follows:

18 │ 157. Defendants manufactured, sold and/or distributed Avandia to Plaintiffs and/or

19 │ decedents to be used to increase insulin sensitivity without causing serious effects, harm, or

20 │ injury.

21 │ 158. At all times mentioned herein, Avandia was dangerous and presented a

22 │ substantial danger to diabetic patients and these risks and dangers were known or knowable at

23 │ the time of manufacture, sale or distribution to Plaintiffs and/or decedents. Ordinary

24 │ consumers would not have recognized the potential risks and dangers that Avandia posed to

25 │ cardiac patients because its uses were specifically promoted to improve the health of diabetic

26 │ patients. Avandia was used in a way reasonably foreseeable to Defendants by Plaintiffs and/or

27 │ decedents. Defendants failed to provide warnings of such risks and dangers to Plaintiffs and/or

28 │

1 decedents as described herein.

2 159. As a result of Plaintiffs' and/or decedents' ingestion of the defective Avandia,
3 Plaintiffs and/or decedents were caused to suffer the herein described injuries.

4 160. In doing the acts herein described, Defendants acted with oppression, fraud and
5 malice, and Plaintiffs are therefore entitled to punitive damages to deter Defendants from
6 engaging in similar conduct in the future. Said wrongful conduct was done with advance
7 knowledge, authorization and/or ratification of an officer, director and/or managing agent of
8 the Defendants.

9 161. WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter
10 set forth.

11 **FOURTH CAUSE OF ACTION**

12 *Negligence*

13 162. Ingesting Plaintiffs, Survival Plaintiffs and Heir Plaintiffs hereby incorporate by
14 reference, as if fully set forth herein, each and every allegation contained in previous
15 paragraphs of this Complaint as to Defendants, Does 1 through 100, and each of them, as
16 follows:

17 163. Defendants and their representatives were manufacturers and/or distributors of
18 Avandia. At all times herein, Defendants had a duty to properly manufacture, compound, test,
19 inspect, package, label, distribute, market, examine, maintain supply, provide proper warnings,
20 and prepare for use and sell the aforesaid product.

21 164. Defendants so negligently and carelessly manufactured, compounded, tested,
22 failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended,
23 displayed, sold, examined, failed to examine and supplied aforesaid product, that it was
24 dangerous and unsafe for the use and purpose for which it was intended, that is, increasing
25 insulin sensitivity without causing serious injury, harm, or effect to Plaintiffs and/or decedents
26 and others similarly situated. As a result of the carelessness and negligence of Defendants,
27 Plaintiffs and/or decedents ingested Avandia in the manner intended by the manufacturer and,

28

27
Complaint for Damages

as a result, Plaintiffs suffered the injuries and damages described herein.

165. WHEREFORE, Plaintiffs pray for judgment against Defendants, as hereinafter set forth.

### FIFTH CAUSE OF ACTION

#### *Breach of Implied Warranty*

166. Ingesting Plaintiffs, Survival Plaintiffs and Heir Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in previous paragraphs of this Complaint as to Defendants, Does 1 through 100, and each of them, as follows:

167. Defendants impliedly warranted that Avandia, which Defendants designed, manufactured, assembled, promoted, sold and distributed to Plaintiffs and/or decedents was merchantable and fit and safe for ordinary use. Defendants further impliedly warranted that Avandia was fit for the particular purpose of increasing insulin sensitivity in diabetic patients without causing serious harm, injury or effect.

168. Ingesting Plaintiffs, Decedents and their physicians and healthcare providers relied on the skill and judgment of the Defendants in using Avandia.

169. Defendants' Avandia was defective, un-merchantable, and unfit for ordinary use when sold, and unfit for the particular purpose for which they were sold, and subjected Plaintiffs and/or decedents to severe and permanent injuries. Therefore, Defendants breached the implied warranties of merchantability and fitness for a particular purpose when Avandia was sold to Plaintiffs and/or decedents in that Avandia is defective and has failed to increase insulin sensitivity without serious harm in diabetic patients as represented and intended.

170. As a result of Defendants' breach of the implied warranties of merchantability and fitness for a particular purpose, Plaintiffs and/or decedents sustained and/or will continue to sustain the injuries and damages described herein and are therefore entitled to compensatory damages.

171. Defendants now have ample and sufficient notice of breach of said warranty.

28
Complaint for Damages

EXHIBIT A, Page 43

172. WHEREFORE, Plaintiffs pray for judgment against Defendants, as hereinafter set forth.

### SIXTH CAUSE OF ACTION

#### *Breach of Express Warranty*

173. Ingesting Plaintiffs, Survival Plaintiffs and Heir Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in previous paragraphs of this Complaint as to Defendants, Does 1 through 100, and each of them, as follows:

174. Defendants expressly warranted to Plaintiffs and/or decedents and/or their authorized agents or sales representatives, in publications, and other communications intended for medical patients, and the general public, that Avandia was safe, effective, fit and proper for its intended use.

175. Plaintiffs and/or decedents and their physicians reasonably relied upon the skill and judgment of Defendants and upon said express warranty in using the aforementioned product. The warranty and representations were untrue in that the product caused severe injury to Plaintiffs and/or decedents. Avandia was unsafe and therefore unsuitable for the use in which it was intended, and caused Plaintiffs and/or decedents to sustain damages and injuries herein alleged.

176. As soon as the true nature of the product, and the fact that the warranty and representations were false, were ascertained, said Defendants had ample and sufficient notice of the breach of said warranty.

177. WHEREFORE, Plaintiffs pray for judgment against Defendants, as hereinafter set forth.

### SEVENTH CAUSE OF ACTION

#### *Deceit by Concealment – Cal. Civ. Code §§ 1709, 1710*

178. Ingesting Plaintiffs, Survival Plaintiffs and Heir Plaintiffs hereby incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege

29
Complaint for Damages

as to Defendants, Does 1 through 100, and each of them, as follows:

179. California Civil Code section 1709 provides that one who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damages which he thereby suffers.

180. California Civil Code section 1710 provides, in part, that a deceit, within the meaning of section 1709, is the suggestion, as a fact, of that which is not true, by one who does not believe it to be true; the assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; or the suppression of fact, by one who is found to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact.

181. The Defendants, and each of them, from the time that the Avandia was first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed, and up to the present, willfully deceived the Ingesting Plaintiffs, Decedents, their prescribing physicians and healthcare providers, the medical, scientific, pharmaceutical and healthcare communities, and the public in general, by suggesting to some or all of them untrue facts about their metoclopramide products that they did not believe to be true or had no reasonable ground for believing them to be true, and by concealing from them the true facts concerning such products, which the Defendants had a duty to disclose.

182. At the time Avandia was manufactured, distributed, and sold to Ingesting Plaintiffs and Decedents, the Defendants were in a unique position of knowledge, which was not possessed by Ingesting Plaintiffs, Decedents or their physicians, concerning the safety and effectiveness of the drug, and thereby held a position of superiority over Ingesting Plaintiffs, Decedents and their physicians.

183. Through their unique knowledge and expertise regarding the defective nature of Avandia, and through their marketing statements to physicians and patients in advertisements, promotional materials, labels and other communications as herein alleged, Defendants professed to Ingesting Plaintiffs' and Decedents' physicians that they were in possession of

EXHIBIT A, Page 45

facts demonstrating that Avandia was safe and effective for its intended use and was not defective, when in fact they were not, and in fact possessed information they did not disclose that they had a duty to disclose to ensure such physicians were not misled.

184. Defendants knew or had no reasonable ground to believe the truth of their representations to Ingesting Plaintiffs' and Decedents' physicians. Such representations were made to induce the purchase of Avandia and/or metoclopramide, and Ingesting Plaintiffs, Decedents and their physicians relied upon those statements when purchasing and administering Avandia.

185. Defendants took unconscionable advantage of their dominant position of knowledge with regard to Ingesting Plaintiffs, Decedents and their physicians and engaged in constructive fraud in their relationship.

186. Ingesting Plaintiffs, Decedents and their physicians reasonably relied on these misrepresentations and misleading facts.

187. The Defendants intentionally concealed and suppressed the true facts concerning the Avandia with the intent to defraud the Ingesting Plaintiffs, Decedents, their prescribing physicians and healthcare providers, the medical, scientific, pharmaceutical and healthcare communities, and the public in general, in that Defendants knew that the physicians and healthcare providers would not have prescribed the Avandia, and Ingesting Plaintiffs and Decedents would not have used the Avandia if they had known the true facts concerning the dangers of the Avandia.

188. As a result of the foregoing fraudulent and deceitful conduct by Defendants, and each of them, Ingesting Plaintiffs and the Plaintiffs' representing the interests of decedent's estates, for the sake of example and by way of punishing said defendants, seeks punitive damages according to proof.

189. As a result of the foregoing fraudulent and deceitful conduct by Defendants, and each of them, Decedents were cause injury and death and Plaintiffs were caused to suffer and will continue to suffer the herein described injuries and damages.

190. WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

### EIGHTH CAUSE OF ACTION

#### *Fraud*

191. Ingesting Plaintiffs, Survival Plaintiffs and Heir Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in previous paragraphs of this Complaint as to Defendants, Does 1 through 100, and each of them, as follows:

192. Defendants falsely and fraudulently represented to Plaintiffs and/or decedents, their physicians, and to members of the general public that the aforesaid product was safe, effective, reliable, consistent, and better than other similar products due to its ability to increase insulin sensitivity without causing serious harm when used in the manner intended by the manufacturer. The representations by said Defendants were in fact, false. The true facts include, but are not limited to, the fact that the aforesaid product was not safe to be used and was, in fact, dangerous to the health and bodies of the Plaintiffs and/or decedents.

193. When the Defendants made these representations, they knew that they were false. Defendants made said representations with the intent to defraud and deceive Plaintiffs and/or decedents, and with the intent to induce them to act in the manner herein alleged, that is to use the aforementioned product for increasing insulin sensitivity.

194. At the time Defendants made the aforesaid representations and Plaintiffs and/or defendants took the actions herein alleged, Plaintiffs and/or decedents were ignorant of the falsity of these representations and reasonably believed them to be true. In reliance upon said representations, Plaintiffs and/or decedents were induced to, and did, use the aforementioned product as herein described. If Plaintiffs and/or decedents had known the true material facts and received full disclosure of all dangers associated with Avandia, they would not have taken such action. The reliance of Plaintiffs and/or decedents and their physicians upon Defendants' representations were justified because said representations were made by individuals and

EXHIBIT A, Page 47

1 entities who appeared to be in a position to know the true facts and all dangers associated with
2 Avandia.

3     195.  As a result of Defendants' fraud and deceit, Plaintiffs and/or decedents were
4 caused to sustain the herein described injuries and damages.

5     196.  By engaging in the acts herein alleged, the Defendants acted with oppression,
6 fraud, and malice, and Plaintiffs are therefore entitled to punitive damages to deter Defendants,
7 and others from engaging in similar conduct in the future. Said wrongful conduct was done
8 with advance knowledge, authorization and/or ratification of an officer, director and/or
9 managing agent of each Defendant.

10     197.  WHEREFORE, said Plaintiffs pray for judgment against Defendants as
11 hereinafter set forth.

12 <center>**NINTH CLAIM FOR RELIEF**</center>

13 <center>***Fraud by Concealment***</center>

14     198.  Ingesting Plaintiffs, Survival Plaintiffs and Heir Plaintiffs hereby incorporate by
15 reference, as if fully set forth herein, each and every allegation contained in previous
16 paragraphs of this Complaint as to Defendants, Does 1 through 100, and each of them, as
17 follows:

18     199.  At all times mentioned herein, Defendants had the duty and obligation to
19 disclose to Plaintiffs and/or decedents and to their physicians the true facts concerning the
20 aforesaid product, Avandia, that is, that said product was dangerous and defective, lacking
21 efficacy for its purported use and lacking safety in normal use, and how likely it was to cause
22 serious consequences to users including serious and permanent injuries to the heart.
23 Defendants made the affirmative representations as set forth above to Plaintiffs and/or
24 decedents and their physicians and the general public prior to the date Avandia was ingested by
25 Plaintiffs and/or decedents while concealing material facts.

26     200.  At all times herein mentioned, Defendants willfully and maliciously concealed
27 facts as set forth above from Plaintiffs and/or decedents and their physicians, and therefore,

28 <center>33<br>Complaint for Damages</center>

Plaintiffs and/or decedents, with the intent to defraud as herein alleged.

201. At all times herein mentioned, neither Plaintiffs and/or decedents nor their physicians were aware of the facts set forth above, and had they been aware of said facts, they would not have acted as they did, that is, would not reasonably relied upon said representations of safety and efficacy and utilized Avandia for increasing insulin sensitivity. Defendants and each of their representations were a substantial factor in Plaintiffs and Plaintiffs' decedents utilizing Avandia for increasing insulin sensitivity.

202. As a result of the concealment of the facts set forth above, Plaintiffs and/or decedents sustained injuries as hereinafter set forth.

203. In engaging in the action herein alleged, Defendants acted with oppression, fraud, and malice and Plaintiffs are therefore entitled to punitive damages in an amount reasonably related to Plaintiffs' and/or decedents' actual damages, Defendants' wealth, and sufficiently large enough to deter these Defendants and others from engaging in similar conduct in the future.

204. WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## TENTH CAUSE OF ACTION

### *Negligent Misrepresentation*

205. Ingesting Plaintiffs, Survival Plaintiffs and Heir Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in previous paragraphs of this Complaint as to Defendants, Does 1 through 100, and each of them, as follows:

206. At all relevant times herein, Defendants represented to Plaintiffs and/or decedents and their physicians that their Avandia was safe to use to increase insulin sensitivity knowing that their Avandia was defective in causing injuries described herein.

207. The Defendants made the aforestated representations with no reasonable ground for believing them to be true when Defendants' own data showed Avandia to be defective and

34
Complaint for Damages

dangerous when used in the intended manner.

208. The aforesaid representations were made to the physicians prescribing Avandia prior to the date it was prescribed to Plaintiffs and/or decedents, with the intent that Plaintiffs and/or decedents and their physicians would rely upon such misrepresentations about the safety and efficacy of Avandia. Plaintiffs and/or decedents and their physicians reasonably relied on such representations that Avandia was safe for use to aid in the treatment of increasing insulin sensitivity.

209. The representations by Defendants to Plaintiffs and/or decedents were false, and thereby caused Plaintiffs' and/or decedents' injuries described herein.

210. WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

### ELEVENTH CAUSE OF ACTION

#### *Wrongful Death*

211. Plaintiffs of and on behalf of decedents identified herein, hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in previous paragraphs of this Complaint as to Defendants, Does 1 through 100, and each of them, as follows:

212. Plaintiffs of and on behalf of decedents are the surviving heirs of the Decedents (hereinafter referred to as "Heir Plaintiffs", or other persons authorized to bring an action for the wrongful death of the Decedents, who used Defendants' Avandia product and were injured and died as a result. Said Decedents were prescribed, supplied with, received, took, ingested, used and consumed said metoclopramide products as tested, studied, researched, evaluated, endorsed, designed, formulated, compounded, manufactured, produced, processed, assembled, inspected, distributed, marketed, labeled, promoted, packaged, advertised for sale, prescribed, sold or otherwise placed in the stream of interstate commerce by Defendants.

213. The injuries and damages of Heir Plaintiffs and Decedents were caused by the wrongful acts, omissions, and fraudulent misrepresentations of Defendants.

214. As a result of the conduct of Defendants and the ingestion of Defendants' Avandia product, the Decedents suffered fatal injuries.

215. Furthermore, by reason of Decedents' death, Heir Plaintiffs identified herein have been permanently deprived of love, care, companionship, comfort, services, society, solace, affection, instruction, advice, training, guidance, protection, counsel, support, contributions, consortium, accumulations, inheritance and right of inheritance of Decedents, and have suffered grief and sorrow, all to their damage in an amount within the jurisdiction of this court, and according to proof.

216. Heir Plaintiffs are entitled to recover economic and non-economic damages against all Defendants for wrongful death directly and legally caused by the defects in Defendants' Avandia product and the negligent conduct, acts, errors, omissions and intentional and negligent misrepresentations of Defendants, and each of them.

217. WHEREFORE, Heir Plaintiffs identified herein pray for judgment against Defendants, and each of them, as set forth herein below.

## TWELFTH CAUSE OF ACTION

### *Survival Action*

218.   Survival Plaintiffs and Heir Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in previous paragraphs of this Complaint as to Defendants, Does 1 through 100, and each of them, as follows:

219.   Prior to their death, Decedents incurred substantial damages, and/or hospital expenses as a direct and proximate result of the acts and/or omissions of the Defendants, and each of them, as herein alleged.  The amount of those damages will be shown according to proof at the time of the trial.

220.   A cause of action for recovery of such damages by Decedents' successors in interest survives their death pursuant to California Code of Civil Procedure 377.

## THIRTEENTH CAUSE OF ACTION
### *Loss of Consortium*

221.   Spouse Plaintiffs hereby incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as to Defendants, and each of them, as follows:

222.   This cause of action is asserted by the Spouse Plaintiffs identified previously whose spouses suffered personal injuries as a result of using Defendants' Avandia product, who at all times relevant to this action were, and are now, husband and wife.

223.   Subsequent to their injuries, Ingesting Plaintiffs and Decedents were and are unable to perform the necessary duties as a spouse and the work and service usually performed in the care, maintenance and management of the family home.

224.   Spouse Plaintiffs were unaware the ingesting Plaintiffs' injuries were caused by Avandia until within two years of filing this complaint.

225.   By reason of the injuries sustained by their spouses, the Spouse Plaintiffs have been and will continue to be deprived of the loss of love, companionship, comfort, care, assistance, protection, affection, society, and moral support of their spouses, as to their damage, in an amount presently unknown but which will be proved at the time of trial.

226. WHEREFORE, said Spouse Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## PRAYER FOR RELIEF

WHEREFORE, Ingesting Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1. For past and future general damages, according to proof;

2. For past and future medical and incidental expenses, according to proof;

3. For past and future loss of earnings and/or earning capacity, according to proof;

4. For future medical monitoring costs, according to proof;

5. For punitive and exemplary damages in an amount to be determined at trial;

6. For prejudgment interest on all damages as is allowed by the laws of the State of California;

7. For costs of suit incurred herein;

8. For injunctive relief, enjoining Defendants from the acts of unfair competition and untrue and misleading advertising;

9. For a disgorgement of profits, according to proof.

10. For such other and further relief as the Court may deem just and proper, including prejudgment interest.

WHEREFORE, Survival Plaintiffs, as successors-in-interest to the estates of Decedents, pray for judgment against Defendants, and each of them, as follows:

1. For medical and related expenses according to proof;

2. For loss of earnings according to proof;

3. For exemplary or punitive damages according to proof;

4. For Plaintiffs' cost of suit herein;

5. For injunctive relief, enjoining Defendants from the acts of unfair competition and untrue and misleading advertising;

6. For a disgorgement of profits, according to proof.

38
Complaint for Damages

7.     For such other and further relief as the Court may deem just and proper, including prejudgment interest.

WHEREFORE, Heir Plaintiffs, individually as heir of Decedents, pray for judgment against Defendants, and each of them, as follows:

1.     For loss of pecuniary support; including loss of support, gifts, and benefits, according to proof;

2.     For funeral and burial expenses according to proof;

3.     For the reasonable value of household services that their decedent would have provided;

4.     For the loss of decedent's love, companionship, comfort, care, assistance, protection, society, moral support, training, and guidance;

5.     For injunctive relief, enjoining Defendants from the acts of unfair competition and untrue and misleading advertising;

6.     For a disgorgement of profits, according to proof.

7.     For costs of suit herein; and

8.     For such other and further relief as the Court may deem just and proper, including prejudgment interest.

WHEREFORE, Plaintiffs' Spouses pray for judgment against Defendants, and each of them, as follows:

1.     For plaintiff's damages for loss of consortium and/or society according to proof;

2.     For past and future costs of suit incurred herein.

DATED: June 25, 2013    Law Offices of Sin-Ting Mary Liu

By: _____
       Sin-Ting Mary Liu
       Attorney for Plaintiffs

39
Complaint for Damages

1

## DEMAND FOR JURY TRIAL

2

Plaintiffs hereby demand a trial by jury in this action.

3

4

DATED: June 25, 2013    Law Offices of Sin-Ting Mary Liu

5

6     By: _____

7          Sin-Ting Mary Liu
           Attorney for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

40
Complaint for Damages

## UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE PRADAXA | ) | **MDL No. 2385** |
| **(DABIGATRAN ETEXILATE)** | ) | **3:12-md-02385-DRH-SCW** |
| **PRODUCTS LIABILITY** | ) | **Judge David R. Herndon** |
| **LITIGATION** | ) | |

**This Document Relates to:**

THELMA BUTNER, CLIFTON
FITZSIMMONS, JOHN WILCHINSKI,
GEORGE FLETCHER, and PAULINE
ALDRIDGE,

      Plaintiffs,

      vs.

      Case No. 3:12-cv-60092-DRH-SCW

BOEHRINGER INGELHEIM
PHARMACEUTICALS, INC.,
BOEHRINGER INGELHEIM
FREMONT, INC., BOEHRINGER
INGELHEIM PHARMA GmbH & CO.
KG, BOEHRINGER INGELHEIM
INTERNATIONAL GmbH,
BIDACHEM S.P.A., MCKESSON
CORPORATION and DOES 1-100

      Defendants.

### ORDER DISMISSING FRAUDULENTLY JOINED DEFENDANTS AND DENYING REMAND

**Herndon, Chief Judge:**

### I. INTRODUCTION

One of the defendants, Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI"),

removed this action to federal court on the basis of diversity jurisdiction (Doc. 1).

1

BIPI contends complete diversity exists because the two nondiverse defendants, Boehringer Ingelheim Fremont, Inc. ("BIF") and McKesson Corporation ("McKesson"), were fraudulently joined. Presently, before the Court is the plaintiffs' motion to remand to state court (Doc. 14). The plaintiffs allege various procedural defects in BIPI's notice of removal and contend they have asserted viable claims against the two nondiverse defendants. *Id.* BIPI filed a responsive pleading on January 2, 2013 (Doc. 27). Thereafter, on January 17, 2013, the plaintiffs filed a reply brief (Doc. 28).[1]

## II. BACKGROUND

The plaintiffs are citizens of California, Tennessee, and Louisiana (Doc. 1 ¶¶ 17-21). On May 23, 2012, the plaintiffs filed a complaint in the Superior Court of the State of California for the County of San Francisco (Doc. 1-1). The plaintiffs' complaint asserts twelve causes of action arising from the alleged ingestion of the prescription drug Pradaxa and names six defendants (Doc. 1-1).[2] McKesson and BIF are both citizens of California and are the only non-diverse defendants.

---

[1] The plaintiffs' reply brief, if any, was due on January 16, 2013 (Doc. 26). On January 17, 2013, the plaintiffs' simultaneously filed a reply brief (Doc. 28) and a motion for extension of time to file (Doc. 29) stating counsel mistakenly believed the reply was due on January 17, 2013. Although the Court has considered the plaintiffs' reply brief, the Court notes it could have stricken the briefing for timeliness and for failure to comply with Local Rule 83.1(f) (the filing attorney did not file a written entry of appearance until February 19, 2013 and only did so after being contacted by the Court, out of courtesy, on two separate occasions). The Court also reminds the plaintiffs that reply briefs are not favored and should be filed only in exceptional circumstances. S.D. Ill. Local Rule 7.1(c). The plaintiffs' reply brief does not state whether exceptional circumstances are present as required under Local Rule 7.1(c). *Id.* The Court may not be so lenient in the future.

[2] The named defendants are Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI") (a citizen of the States of Delaware and Connecticut), Boehringer Ingelheim Fremont, Inc. (a citizen of the States of Delaware and California), Boehringer Ingelheim Pharma GmbH & Co. KG. (a citizen of the foreign state of Germany), Boehringer Ingelheim International GmbH (a citizen of the foreign state of

2

On July 16, 2012, after the plaintiffs' complaint was filed in state court but prior to service of process on any defendant, BIPI removed the case to the U.S. District Court for the Northern District of California on the basis of diversity jurisdiction (Doc. 1).[3] In removing the action, BIPI did not obtain the consent of the other named defendants. BIPI's notice of removal states that BIPI did not need to obtain the consent of the other named defendants because, at the time of removal, no defendant had been served (Doc. 1 ¶ 7). In addition, BIPI's notice of removal states it was not required to obtain the consent of BIF or McKesson because both defendants were fraudulently joined. *Id.*

On December 7, 2012, the case was transferred from the Northern District of California to this Multidistrict Litigation pursuant to 28 U.S.C. § 1407. Presently before the Court is the plaintiffs' motion to remand to state court (Doc. 14). The plaintiffs raise several procedural objections regarding BIPI's notice of removal, including the following: (1) the removal is premature because it was filed prior to service on any defendant; (2) the removal is improper because BIPI did not obtain the consent of the other defendants; and (3) the removal violates the fraudulent joinder rule. The plaintiffs also contend that this Court lacks subject matter jurisdiction because they have asserted viable claims against the nondiverse defendants.

---

Germany), Bidachem S.P.A. (a citizen of the foreign state of Italy), McKesson Corporation (a citizen of the States of Delaware and California), and Does 1-100 (Doc. 1 ¶¶ 22-27).

[3] In their motion to remand, the plaintiffs erroneously assert this case was removed by defendants Boehringer Ingelhei Pharmaceuticals, Inc., Boehringer Ingelheim Fremont, Inc., Boehringer Ingelheim Pharma GMBH & Co. KG, Boehringer Ingelheim Pharma GMBH & Co. KG, Boehringer Ingelheim International GMBH, and Bidachem S.P.A. (Doc. 14 p. 1). The notice of removal, however, was filed by BIPI alone (Doc. 1).

3

## III. ANALYSIS

### A. Governing Authority

#### 1. Substantive State Law

In assessing whether a defendant has been fraudulently joined, a court considers whether the asserted claims have any chance of success under state substantive law. Accordingly, prior to conducting a fraudulent joinder analysis, a court must determine which state's substantive law is applicable. When a diversity case is transferred by the Multidistrict Litigation Panel (as is the case here), the transferee court applies the state laws that the transferor forum would have applied according to that forum's conflict of laws rules. *See In re Data General Corp. Antitrust Litigation*, 510 F.Supp. 1220, 1227–28 (J.P.M.L. 1979) (*quoting In re Air Crash Disaster at John F. Kennedy International Airport on June 24, 1975*, 407 F.Supp. 244, 246–47 (J.P.M.L.1976)); *Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 732-735 (7th Cir. 2010); *In re Air Crash Disaster Near Chicago*, 644 F.2d 594, 610 (7th Cir. 1981). [4] Accordingly, in the instant case, the Court would apply California's "governmental interest" approach. [5] Because this

---

[4] This parallels the rules governing cases transferred pursuant to 28 U.S.C. § 1404(a). *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 243, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (transferee court must apply the choice of law rules of the State from which the case was transferred); *Barron v. Ford Motor Co. of Canada Ltd.*, 965 F.2d 195, 197 (7th Cir. 1992) (noting that when a case is transferred on grounds of convenience, the transferee court must apply the conflict of laws rules of the transferor jurisdiction whether the defendant or the plaintiff requested the transfer).

[5] A district court sitting in California would apply California conflict of laws rules. *See Malone v. Corrections Corp. of Am.*, 553 F.3d 540, 542 (7th Cir. 2009) (A district court sitting in diversity applies the conflict of laws rules of the state in which it sits). California applies a "governmental interest" approach. *Reich v. Purcell*, 67 Cal.2d 551, 554–55, 63 Cal.Rptr. 31, 432 P.2d 727 (Cal. 1967). The objective of this approach is to determine the law that most appropriately applies to the issue involved, considering the interests of the litigants and all states involved. *Reich*, 67 Cal.2d at 555, 63 Cal.Rptr. 31, 432 P.2d 727. In the instant case, the following jurisdictions might

4

Court would apply California's "governmental interest" approach. [5] Because this

case involves multiple plaintiffs and numerous theories of recovery, the Court would have to apply an individualized choice of law analysis to each plaintiff and each claim to determine which jurisdiction's substantive law governs the same. *See Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1188 (9th Cir. 2001).[6]

### 2. Federal Law

With regard to questions of federal law, the Court is governed by the law of the Seventh Circuit. *See McMasters v. U.S.* 260 F.3d 814, 820 (7th Cir. 2001) (in general, the law of the circuit where the transferee court sits governs questions of federal law). [7] *See also Eckstein v. Balcor Film Investors,* 8 F.3d 1121, 1126 (7th Cir. 1993), cert. denied, 510 U.S. 1073, 114 S.Ct. 883, 127 L.Ed.2d 78 (1994) (law of the transferor forum is only applied when the federal law in question is intended to be geographically non-uniform).

---

have an interest in having their substantive laws applied: Louisiana (only with regard to the claims of the Louisiana citizens); Tennessee (only with regard to the claims of the Tennessee citizens); California (with regard to the claims of the California citizens and, as the forum, with regard to the claims of all plaintiffs). In addition, Delaware, Connecticut, Germany, and Italy are potentially interested jurisdictions.

[6] In the instant case, the plaintiffs assume California substantive law governs all of the plaintiffs' claims (presumably because the case was filed in California). But here, the law of the forum is not necessarily controlling. This is particularly true with respect to those plaintiffs who are citizens of (and were likely injured in) states other than California. *See e.g., Boaz v. Boyle & Co.,* 40 Cal. App. 4th 700, 713 (although the situs of the injury is not controlling, it remains a relevant consideration).

[7] Although the Seventh Circuit has yet to decide which law governs federal claims in cases transferred under 28 U.S.C. § 1407, it has adopted the above rationale when resolving the question under 28 U.S.C. § 1404(a), which authorizes district courts to transfer cases for reasons of convenience. *See McMasters v. U.S.,* 260 F.3d 814, 819 (7th Cir. 2001); *Eckstein v. Balcor Film Investors,* 8 F.3d 1121, 1126 (7th Cir. 1993), *cert. denied,* 510 U.S. 1073, 114 S.Ct. 883, 127 L.Ed.2d 78 (1994).

5

EXHIBIT B, Page 60

### 3. District Court Decisions

The Court reminds the parties that district court opinions have no precedential value and are not binding on this court. *See, e.g., Howard v. Wal–Mart Stores, Inc.*, 160 F.3d 358, 359 (7th Cir. 1998); *Malabarba v. Chicago Tribune Co.*, 149 F.3d 690, 697 (7th Cir.1998) little or no authoritative value"). Further, the undersigned judge has specific case management procedures relating to citation of federal trial courts:

> When parties or attorneys feel compelled to cite other federal trial courts as authority for a particular proposition of law, despite the complete lack of precedential authority thereof, the name of the trial judge whose order is cited should be included with the citation. Furthermore, the exact purpose in citing the case should be included since it is presumed that it is not cited as binding precedent on this Court. If a subsequent Seventh Circuit opinion, for example, relies upon the case for a reason pertinent to the action at bar, this Court should be so advised.

Chief Judge David R. Herndon Case Management Procedures, p. 2 (available at http://www.ilsd.uscourts.gov/documents/Herndon.pdf).

### B. Alleged Procedural Deficiencies

#### 1. Timeliness of Removal

The plaintiffs contend that, because the notice of removal was filed prior to the plaintiffs effecting service on *any* of the defendants, it was premature and thus untimely (Doc. 14 p. 11). The Court is not persuaded by this argument. Section 1446(b)(1) merely establishes the deadline or outer limit for filing a notice of removal, after which removal is untimely. *See* 28 U.S.C. § 1446(b)(1)("The notice of removal of a civil action or proceeding *shall be filed within thirty days after*

6

*the receipt by the defendant, through service or otherwise*, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based[.]") (emphasis added). Nothing in section 1446(b)(1), or any other statute,[8] indicates that a defendant must formally receive the complaint before removing the case. Given the statute's clarity, it is not the Court's place to impose any such requirement.[9]

### 2. Consent

The plaintiffs argue the removal was defective because BIPI did not obtain the consent of the other defendants (Doc. 14 p. 12). The plaintiffs are correct in noting that the judicially created "rule of unanimity" generally requires all defendants to consent to removal. *See Chicago, Rock Island & Pac. Ry. Co. v. Martin*, 178 U.S. 245, 248, 20 S.Ct. 854, 44 L.Ed. 1055 (1900). Federal courts, however, uniformly recognize that fraudulently joined defendants and unserved defendants are not required to join in the removal.[10]

---

[8] In fact, 28 U.S.C. § 1441 indicates that a complaint need only be filed to be removable. *See* 28 U.S.C. § 1441(a) ("any civil action *brought* in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants") (emphasis added). *See also* 28 U.S.C. § 1448 (diminishing the significance of pre-removal service by providing that service may be completed after removal in cases "in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective").

[9] The plaintiffs cite to a number of cases addressing the significance of service of process in evaluating whether diversity of citizenship exists (Doc. 14 pp. 11-12). These cases relate to the existence of diversity jurisdiction and are not applicable to the plaintiffs' timeliness arguments.

[10] *See e.g. Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 366 (7th Cir. 1993) (overruled on other grounds by *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 540 (7th Cir. 2006) (noting that a party's consent "was not needed" where it was not served until after the filing of the removal petition); *Id.* at 368 ("only indispensable defendants are required to join in the petition for removal; the consent of nominal or formal parties is not necessary"); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n. 1 (9th Cir.1988) (fraudulently joined, unknown, nominal, and unserved defendants need not consent); *Salveson v. W. States Bankcard Ass'n*, 731 F.2d 1423,

7

Here, none of the defendants had been served at the time of removal. Accordingly, BIPI did not need to obtain the consent of the other defendants. Moreover, for the reasons discussed below, the Court finds McKesson and BIF were fraudulently joined. As a result, BIPI did not need to obtain consent from McKesson or BIF.

### 3. Forum Defendant Rule

#### a. The forum defendant rule does not apply to fraudulently joined defendants

The "forum defendant rule," contained in 28 U.S.C. § 1441(b)(2), provides that a case may not be removed on the basis of diversity jurisdiction where one or more defendants is a citizen of the state in which the action is pending. *See* 28 U.S.C. § 1441(b)(2). In the instant case, the plaintiffs claim the forum defendant rule bars removal because BIF and McKesson are citizens of California, the state in which the action was brought (Doc. 28 pp. 5-7).

BIPI asserts the forum defendant rule is inapplicable because BIF and McKesson were fraudulently joined. The Court agrees. Section 1441(b)(2) provides that an action otherwise removable on diversity grounds "may not be removed if any of the parties in interest *properly* joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2) (emphasis added). Thus, pursuant to the plain language of the statute, removal is only prohibited when a *properly* joined and served resident defendant is present.

---

1429 (9th Cir. 1984), superseded by statute on unrelated grounds, as noted in *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1392 n. 3 (9th Cir. 1988) ("Our circuit rule is that a party not served need not be joined.").

A defendant that has been fraudulently joined to defeat diversity jurisdiction does not meet this requirement.[11] In the instant case, for the reasons discussed below, the Court finds that BIF and McKesson were fraudulently joined. As a result, the forum defendant rule is not applicable.

> b. The requirement of complete diversity must be distinguished from the requirements of removability

The forum defendant rule is not applicable because BIF and McKesson were fraudulently joined. Accordingly, the Court need not resolve the parties' arguments with regard to service of process and the forum defendant rule. Nonetheless, the Court will take a moment to clarify an area of confusion that is evident from the plaintiffs' briefing.

BIPI contends that, even if the forum defendant rule were applicable, the presence of an unserved resident defendant would not bar removal. The plaintiffs insist that service is not a relevant consideration in assessing the propriety of removal under the forum defendant rule.[12] As support for their argument, the plaintiffs rely on a number of decisions in which the defendants attempted to use lack of service as an exception to the requirement of complete *diversity*.[13]

---

[11] This holding is consistent with a fundamental principle of fraudulent joinder, namely that a defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 (1921).

[12] In fact, the plaintiffs claim that BIPI's interpretation of the forum defendant rule constitutes a "blatant misreading of the statute" that has been rejected by "9th Circuit Courts and courts nationwide as improper gamesmanship by the defense bar" (Doc. 28 p. 5).

[13] (*See* Doc. 14 pp. 11-12) (*citing Jennings-Frey v. NYK Logistics Americas Inc.*, No. 2:10-cv-09737, 2011 WL 642653 (C.D. Cal. Feb. 11, 2011) (not reported) (Nguyen, J) (rejecting argument that citizenship of nondiverse defendant should be disregarded in determining *complete diversity*

9

Reliance on these decisions demonstrates the plaintiffs are conflating section 1332's *diversity* requirement with the requirements of *removability* under the forum defendant rule. This is problematic because there is a crucial distinction between what is relevant in ascertaining diversity (a jurisdictional question) and what is relevant in ascertaining removability under section 1441(b)(2) (a procedural question). [14]

Section 1332 provides a basis for original subject matter jurisdiction over actions between citizens of different states when the sum or value of the matter in controversy exceeds $ 75,000. 28 U.S.C. § 1332(a). The statute requires complete diversity, meaning "none of the parties on either side of the litigation may be a citizen of a state of which a party on the other side is a citizen." *Howell by Goerdt v. Tribune Entertainment Co.,* 106 F.3d 215, 217 (7th Cir. 1997). If complete diversity exists, there is a jurisdictional basis for removal under 28 U.S.C. § 1441(a).

There is no question that the citizenship of all named defendants, [15] regardless of service, must be considered in determining whether diversity

---

because nondiverse defendant was not served at the time of removal); *Preasesu v. Prudential Ins. Co.,* 591 F.2d 74, 78 (9th Cir. 1979) (holding that the "properly joined and served" language in section 1441(b) does not alter the requirement of complete diversity and concluding that service is immaterial in assessing diversity); *Pecherski v. Gen. Motors Corp.,* 636 F.2d 1156, 1161 (8th Cir. 1981) (holding that section 1441(b) did not expand the removal requirement and stating that in assessing diversity jurisdiction a court "must consider all named defendants, regardless of service.")

[14] *Holmstrom v. Peterson,* 492 F.3d 833, 838 (7th Cir.2007) (the forum defendant rule is not jurisdictional; it is a procedural impediment to removal).

[15] There are of course exceptions to this general rule. Relevant to the instant case is the doctrine of fraudulent joinder which allows a court to disregard the citizenship of any defendants that have

jurisdiction exists.[16] However, the forum defendant rule is a separate, non-jurisdictional inquiry with its own statutory requirements. The vast majority of courts considering those statutory requirements have concluded that, where diversity jurisdiction exists, the presence of an unserved forum defendant does not bar removal.[17] As the undersigned judge has explained in previous decisions:

> nothing in 28 U.S.C. § 1441 [bars] removal in diversity cases when an unserved resident defendant is present. In fact, just the opposite: as that statute's language clearly provides, if diversity jurisdiction exists, only a "joined *and served*" resident prevents … removal. Under the statute's plain language, therefore, if a resident defendant is not both joined and served, the forum defendant rule does not apply.

*Massey v. Cassens & Sons, Inc.*, 05-0598-DRH (Feb. 16, 2006 Doc. 58 pp. 5-7) (Herndon, C.J.) (citations removed) (emphasis supplied). *See also Sheffer v. Cottrell, Inc., et al.*, 2009 WL 1231037, *2-*3 (S.D. Ill. Apr. 30, 2009) (Herndon, C.J.). [18]

---

been fraudulently joined. *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 763 (7th Cir. 2009).

[16] *See e.g., Pullman Co. v. Jenkins*, 305 U.S. 534, 59 S. Ct. 347, 83 L. Ed. 334 (1939) (diversity jurisdiction is determined by the citizenship of the parties, regardless of service of process); *N.Y. Life Ins. Co. v. Deshotel*, 142 F.3d 873, 883 (5th Cir. 1998) ("Whenever federal jurisdiction in a removal case depends upon complete diversity, the existence of diversity is determined from the fact of citizenship of the parties named and not from the fact of service."); *Howell by Goerdt v. Tribune Entertainment Co.*, 106 F.3d 215, 217 (7th Cir. 1997) (rejecting contention that, in assessing diversity, court could ignore the citizenship of an unserved defendant); see also 14B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 3723 (4th ed. 2012) ("A party whose presence in the action would destroy diversity must be dropped formally, as a matter of record, to permit removal to federal court. It is insufficient, for example, that service of process simply has not been made on a non-diverse party[.]").

[17] *See e.g., McCall v. Scott*, 239 F.3d 808, 813 n. 2 (6th Cir.2001) ("Where there is complete diversity of citizenship, … the inclusion of an unserved resident defendant in the action does not defeat removal under 28 U.S.C. § 1441(b)."); *see also* 14B C. Wright, A. Miller, E. Cooper, Federal Practice and Procedure § 3723, at 341 (4th ed. 2012) (the "joined and served" language found in section 1441(b)(2) implies that, in diversity actions, "a diverse but resident defendant who has not been served may be ignored in determining removability."

[18] Some courts have carved out a limited exception to the rule that, in diversity cases, section 1441(b)(2) does not bar removal of actions involving an unserved resident defendant. For

11

Therefore, the forum defendant rule does not bar removal when an unserved resident defendant is present. Moreover, although diversity of citizenship is assessed without regard to service of process, this rule is not applicable in the instant case. Here, BIPI does not contend diversity exists because of lack of service. Rather, BIPI contends diversity exists because the forum defendants were fraudulently joined. Accordingly, the plaintiffs' extensive argumentation regarding service of process and the existence of diversity jurisdiction is not relevant.

## C. Fraudulent Joinder

### 1. Legal Standard

The doctrine of fraudulent joinder is an exception to section 1332's complete diversity requirement. *See Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992). Pursuant to the fraudulent joinder doctrine, a district court considering removal may "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 763 (7th Cir. 2009). The doctrine of fraudulent joinder is triggered when a defendant demonstrates that, "after resolving all issues

---

instance, in *Holmstrom v. Harad*, 2005 WL 1950672 (N.D. Ill. Aug. 11, 2005) (Aspen, J.) (relied on by the plaintiffs), the court found that while the presence of an unserved resident defendant normally does not defeat removal, that fact, when coupled with the fact that the removing defendant had not been served, was sufficient to warrant remand. *Holmstrom*, 2005 U.S. Dist. Lexis 16694, at *3-8. The undersigned judge has previously declined to adopt this exception finding it contrary to the plain language of the statute. *See Massey v. Cassens & Sons, Inc.*, 05-0598-DRH (Feb. 16, 2006 Doc. 58 pp. 5-7) (Herndon, C.J.) ("where complete diversity is present...only the presence of a 'joined-and-served' resident defendant defeats removal...The statute contains no proviso, and, given its clarity, it is not the Court's role to insert one.").

12

EXHIBIT B, Page 67

of fact and law in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992); accord, *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 764 (7th Cir. 2009). Put another way, fraudulent joinder exists when a non-diverse defendant is "joined simply to defeat removal, as might be inferred from a demonstration that the claim against that defendant had no possible merit." *Walton v. Bayer Corp.*, 643 F.3d 994, 999 (7th Cir. 2011).

Generally, an evaluation of fraudulent joinder is limited to a review of the allegations in the complaint. However, the Seventh Circuit has held that courts may engage in the limited use of affidavits and similar evidence in assessing relevant jurisdictional facts. *See Faucett v. Ingersoll–Rand Mining & Machinery Co.*, 960 F.2d 653, 655 (7th Cir. 1992). For example, in *Faucett*, the Seventh Circuit held a non-diverse defendant's uncontradicted affidavit, stating the defendant had nothing to do with the allegedly injurious product, established there was no possibility the plaintiff could state a claim against the non-diverse defendant. *Faucett*, 960 F.2d at 654-655.

### 2. Causation is a requisite element of the plaintiffs' claims

The gravamen of the plaintiffs' claims is that, as a result of the ingestion of Pradaxa, each plaintiff suffered various physical, economic and emotional injuries (Doc. 1-1 ¶¶ 11-18). Imposition of liability, under any of the plaintiffs' asserted theories of recovery, will require some causal relationship between the defendant's conduct and the plaintiffs' alleged injuries – regardless of which

13

jurisdiction's substantive law governs the individual claims of each plaintiff.[19]

This concept is aptly described in an ALR annotation on products liability:

> Regardless of the theory which liability is predicated upon, whether
> negligence, breach of warranty, strict liability in tort, or other
> grounds, it is obvious that to hold a producer, manufacturer, or
> seller liable for injury caused by a particular product, there must
> first be proof that the defendant produced, manufactured, sold, or
> was in some way responsible for the product.

Products Liability: Necessity and Sufficiency of Identification of Defendant as

Manufacturer or Seller of Product Alleged to Have Caused Injury, 51 A.L.R.3d

1344, § 2(a) (footnotes omitted). Thus, in the instant case, absent an allegation

that BIF or McKesson was in some way responsible for the allegedly injurious

product, the plaintiffs' claims have no chance of success.

---

[19] Regardless of which jurisdiction's substantive law governs, the plaintiffs must, at a minimum, establish the particular defendant was in some way responsible for the particular product that allegedly harmed the plaintiffs. *See e.g., DiCola v. White Bros. Performance Products, Inc.,* 158 Cal.App. 4th 666, 677, 69 Cal.Rptr.3d 888, 898 (Cal. App. 2008) ("As a general rule, a plaintiff claiming to have been injured by a defective product must prove that the defendant's product, or some instrumentality under the defendant's control, caused his or her injury."); *Sindell v. Abbott Laboratories,* 26 Cal.3d 588, 597–598, 607 P.2d 924, 928, 163 Cal.Rptr. 132, 136 (Cal. 1980) ("as a general rule, the imposition of liability depends upon a showing by the plaintiff that his or her injuries were caused by the act of the defendant or by an instrumentality under the defendant's control.") (internal citations omitted); *Desnoyers v. Wells,* 496 A.2d 237 (Conn. App. 1985) (summary judgment in favor of defendant appropriate where evidence showed that defendant did not manufacture, sell or distribute the allegedly injurious product); *In re Asbestos Litigation,* 911 A.2d 1176, 1208 (Del. Super. 2006) (imposition of liability requires connection between defendant's product and plaintiff's injury); *Aymond v. Texaco, Inc* ., 554 F.2d 206, (C.A. La. 1977) (affirming lower court's directed verdict in favor of manufacturer and noting that manufacturer could not be held liable for worker's injuries where there was no evidence that defective product was manufactured by defendant); *Davis v. Yearwood,* 612 S.W.2d 917 (Tenn. App. 1980) (complaint against all possible manufacturers, sellers, distributors, and the like of all possible products that could have caused plaintiffs' injuries, wherein no specific product or entity was identified, court affirmed dismissal for failure to allege facts showing the moving defendant caused or contributed to plaintiffs' injuries). *See also* Products Liability: Necessity and Sufficiency of Identification of Defendant as Manufacturer or Seller of Product Alleged to Have Caused Injury, 51 A.L.R.3d 1344, § 2(a) (collecting cases).

EXHIBIT B, Page 69

### 3. Boilerplate Allegations are not Sufficient

The first paragraph of the plaintiffs' complaint alleges that Pradaxa is "a pharmaceutical product researched, designed formulated, compounded, tested, manufactured, produced, processed, assembled, inspected, distributed, marketed, labeled, promoted, packaged, advertised for sale, prescribed or otherwise placed in the stream of interstate commerce by [all of the named defendants]" (Doc. 1-1 ¶ 1). These generic allegations as to all of the defendants do not establish that McKesson or BIF was, in any way, responsible for the product that allegedly caused the plaintiffs' injuries. The undersigned judge has addressed the inadequacies of such boilerplate allegations on numerous occasions. *See In re Yasmin & YAZ (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2100, 2011 WL 1885408 (S.D. Ill. May 17, 2011) (Herndon, C.J.); *In re Yasmin & YAZ (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2100, 2010 WL 3937414 (S.D. Ill. Oct. 4, 2010) (Herndon, C.J.); *In re Yasmin & YAZ (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2100, 2010 WL 2402926 (S.D. Ill. June 15, 2010) (Herndon, C.J.); *In re Yasmin & YAZ (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2100, 2010 WL 1963202 (S.D. Ill. May 14, 2010) (Herndon, C.J.).

EXHIBIT B, Page 70

### 4.  Fraudulent joinder as to BIF

Aside from the generic allegations discussed above, the plaintiffs do not allege that BIF manufactured, sold, distributed, or was in any way responsible for the allegedly injurious product. The only specific allegations with regard to BIF are that BIF is California Corporation with its principal place of business in California and that BIF has "conducted business and derived substantial revenue from within the State of California." (Doc. 1-1 ¶ 22). Additionally, BIPI has submitted the declaration of Ralf Otto, the Vice President, Operations and Site Head for BIF (Doc. 1-2). In his affidavit, Mr. Otto asserts as follows:

> 5.    [BIF] specializes in the development and manufacturing of biopharmaceuticals, including the development of new biological entities for the treatment of human diseases.
>
> 6.    [BIF] does not design, develop, manufacture, distribute, market, label or sell the drug [Pradaxa].
>
> 7.    [BIF] is a corporation wholly separate and distinct from [BIPI], and [BIF] is not a parent or subsidiary of BIPI.

(Doc. 1-2 ¶¶ 5-7). Other than referencing their boilerplate allegations, the plaintiffs do not dispute any of the statements in Mr. Otto's affidavit.

Based on the allegations in the complaint and the uncontroverted statements in Mr. Otto's affidavit, it is evident that the plaintiffs cannot establish that BIF was in any way connected to the allegedly injurious product. Accordingly, the plaintiffs's claims against BIF have no chance of success in state court.

16

### 5. Fraudulent joinder as to McKesson

McKesson is a wholesale distributor of prescription medications that purchases pharmaceuticals for sale to retail pharmacies. The only specific allegations with regard to McKesson are as follows: (1) McKesson is "a pharmaceutical distribution and marketing company organized and existing under the laws of the State of Delaware, with its headquarters [in California]" and (2) McKesson "was in the business of promoting and distributing the pharmaceutical product Pradaxa" (Doc. 1-1 ¶¶ 27-28).

The plaintiffs do not allege that McKesson distributed or supplied the Pradaxa that caused their alleged injuries. As the undersigned judge has explained in other decisions, alleging that McKesson is *a* distributor of Pradaxa is not the same as alleging that McKesson is *the* distributor that supplied the pills ingested by the plaintiffs. *See e.g., In re Yasmin & YAZ (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2100, 2011 WL 1885408 (S.D. Ill. May 17, 2011) (Herndon, C.J.). Absent such an allegation, there is absolutely no causal link between McKesson and the allegedly injurious product. Accordingly, the Court finds that the plaintiffs' claims as to McKesson have no chance of success under state law.

### D. Fraudulent Joinder Warrants Dismissal of BIF and McKesson

Resolving all issues of fact and law in favor of the plaintiffs, the Court concludes that the plaintiffs have no chance of establishing a cause of action against McKesson or BIF under substantive state law. Accordingly, the Court

17

concludes that BIF and McKesson have been fraudulently joined. The Court's fraudulent joinder finding warrants dismissal of the fraudulently joined defendants. *See Walton v. Bayer Corp.,* 643 F.3d 994, 999-1001 (7th Cir. 2011) (finding of fraudulent joinder is ground for dismissing defendant from lawsuit).

The Court therefore **DISMISSES** McKessson and BIF.

### E.  Remand is Denied

In light of the Court's finding that the plaintiff cannot sustain a claim against the nondiverse defendants, there is now complete diversity. The second requirement for jurisdiction is that the amount in controversy must exceed $75,000. The plaintiffs contend that, because the amount in controversy is not expressly alleged, it is "unclear how Defendants can properly allege or establish this crucial element of diversity jurisdiction" (Doc. 14 p. 11 n.1). The Court is not persuaded.

The plaintiffs claim that they suffered "physical, economic and emotional injuries" including the following:

> Plaintiff Thelma Butner: "gastrointestinal bleeding and bleeding ulcers, resulting in the need for four pints of blood and two pints of blood plasma, as well as other permanent injuries, such as general physical weakness and reduction in vision." (Doc. 1-1 ¶ 11)

> Plaintiff Clifton Fitzsimmons: "cerebral and gastrointestinal bleeding, resulting in the need for six pints of blood and one pint of blood plasma." (Doc. 1-1 ¶ 13)

> Plaintiff John Wilchinski: "cerebral bleeding and stroke, resulting in permanent long term injuries and the removal of his right foot." (Doc. 1-1 ¶ 15).

18

EXHIBIT B, Page 73

Plaintiff George Fletcher: "gastrointestinal bleeding, resulting in the need for fourteen pints of blood and removal of his lower intestine." (Doc. 1-1 ¶ 17)

Plaintiff Pauline B. Aldridge: "gastrointestinal bleeding and bleeding ulcers, resulting in serious long term injuries." (Doc. 1-1 ¶ 18)

These alleged injuries make it abundantly clear that the plaintiffs are seeking damages in excess of $75,000. *See Walton v. Bayer Corp.*, 643 F.3d 994, 998 (7th Cir. 2011).

Therefore, the Court **FINDS** that it has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 and the plaintiffs' motion to remand is **DENIED**.

## IV. CONCLUSION

For the reasons discussed above, the Court **FINDS** and **ORDERS** as follows:

The nondiverse defendants, Boehringer Ingelheim Fremont, Inc. and McKesson Corporation, were fraudulently joined. Accordingly, Boehringer Ingelheim Fremont, Inc. and McKesson Corporation are **DISMISSED**.

The removal was procedurally proper. Additionally, the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 (the amount in controversy is met and,

19

in light of the dismissal of the nondiverse defendants, complete diversity exists).

Therefore, the plaintiffs' motion to remand is **DENIED**.

    **IT IS SO ORDERED.**

Digitally signed by
David R. Herndon
Date: 2013.02.22
15:53:10 -06'00'

**Chief Judge**
**United States District Court**

          **Date: February 22, 2013**

20



KAYE SCHOLER LLP

1
2
3                                                   23 APR 26 2009
4                                                   [CENTRAL DISTRICT OF CALIFORNIA DEPUTY]
5
6                    UNITED STATES DISTRICT COURT
7                    CENTRAL DISTRICT OF CALIFORNIA
8                           WESTERN DIVISION
9    In re REZULIN LITIGATION          CASE NO. CV 03-1647-R(RZx)
10
11   JACKIE BARLOW; CARMA DEKOVEN;     [PROPOSED] ORDER
     ERNESTINE DELAFONT, ZOE EGGER-    DENYING PLAINTIFFS'
12   MUKARVTZ; and SAMUEL              MOTION FOR REMAND
     GODBOULDT,
13          Plaintiffs,
14
     v.
15
     WARNER-LAMBERT CO.; PFIZER INC.;
16   JERROLD OLEFSKY; McKESSON CORP.,
     et al.
17          Defendants.
18
         Defendants removed this action from state court to this Court alleging diversity
19
     jurisdiction. Defendants asserted that Jerrold Olefsky and McKesson Corp., both of
20
     whom are California residents, were fraudulently joined. Plaintiffs moved to remand
21
     to state court. The motions came on for hearing by the Court on April 21, 2003.
22
         Having considered the motions and other documents in support of and in
23
     opposition to the motions, having heard the arguments of counsel, and being fully
24
     advised in the matter, the Court denies the motion.
25
         The Court finds that Dr. Jerrold Olefsky ("Dr. Olefsky"), a patent-holder and
26
     clinical investigator, owed no legal duty to any of the plaintiffs, and, therefore, there
27
     is no possibility that the plaintiffs can prove a cause of action against Dr. Olefsky.
28
     Thus, Dr. Olefsky must be disregarded for purposes of determining federal diversity

     [SF#####.###]                    [PROPOSED] ORDER

                                      Exhibit B Page 16

1   jurisdiction.

2      The Court further finds that there is no possibility that plaintiffs could prove a

3   cause of action against McKesson, an entity which distributed this FDA-approved

4   medication to pharmacists in California. Pursuant to comment k of the Restatement

5   (Second) of Torts Section 402A and California law following comment k, a

6   distributor of a prescription drug is not subject to strict liability.

7      Accordingly, this Court has diversity jurisdiction over each of these actions.

8   The motion to remand is denied.

9      IT IS SO ORDERED.

10  Dated: April 28, 2003

11

12                          **MANUEL L. REAL**

13                          MANUEL L. REAL
                            UNITED STATES DISTRICT JUDGE

14  Submitted by:

15  O'DONNELL & SHAEFFER LLP
    633 West Fifth Street, Suite 1700
16  Los Angeles, California 90071
    Telephone: (213) 532-2000
    Facsimile:  (213) 532-2020

17
    KAYE SCHOLER LLP
18  1999 Avenue of the Stars
    Los Angeles, California 90067
19  Telephone: (310) 788-1000
    Facsimile:  (310) 788-1200

20  By: _____
21      Robert Barnes
    Attorneys for Defendants
22  WARNER-LAMBERT COMPANY and PFIZER INC.

23

24

25

26

27

28

KAYE SCHOLER LLP

    [PROPOSED] ORDER

Exhibit B Page 19

## List of Related Cases/Plaintiffs

### Filed by Law Offices of Sin-Ting Mary Liu, June 25 to June 26, 2013

1. *Vickie Aaron, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532411, San Francisco Superior Court (approximately 45 plaintiffs);

2. *Paula Ackerman, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532407, San Francisco Superior Court ((approximately 88 plaintiffs);

3. *Henry Adams, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532418, San Francisco Superior Court (approximately 56 plaintiffs);

4. *Jo-Mar Adkins, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532385, San Francisco Superior Court (approximately 58 plaintiffs);

5. *Mike Albayrak, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532422, San Francisco Superior Court (approximately 57 plaintiffs);

6. *Tauheedah Aleem, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532392, San Francisco Superior Court (approximately 56 plaintiffs);

7. *Donna Allen, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532383, San Francisco Superior Court (approximately 57 plaintiffs);

8. *Vanessa Allen, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532381, San Francisco Superior Court (approximately 90 plaintiffs);

9. *Willie Allen, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532395, San Francisco Superior Court (approximately 58 plaintiffs);

10. *Charles Allender, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532416, San Francisco Superior Court (approximately 45 plaintiffs);

11. *Loretta Alvarez, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532427, San Francisco Superior Court (approximately 57 plaintiffs);

12. *Maxio Alvarez, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532368, San Francisco Superior Court (approximately 63 plaintiffs);

13. *Alyssa Anderson, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532396, San Francisco Superior Court (approximately 56 plaintiffs);

14. *Mary Anderson, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532420, San Francisco Superior Court (approximately 57 plaintiffs);

15.     *Brenda Armstrong, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532419, San Francisco Superior Court (approximately 56 plaintiffs);

16.     *Margaret Arvizu, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532394, San Francisco Superior Court (approximately 56 plaintiffs);

17.     *Janice Aud, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532393, San Francisco Superior Court (approximately 58 plaintiffs);

18.     *Clarissa August, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532424, San Francisco Superior Court (approximately 45 plaintiffs);

19.     *Melissa Ball, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532426, San Francisco Superior Court (approximately 57 plaintiffs);

20.     *Renetta Barnes, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532423, San Francisco Superior Court (approximately 55 plaintiffs);

21.     *Bessie Buckley, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532386, San Francisco Superior Court (approximately 56 plaintiffs);

22.     *Deadra Catlett, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532391, San Francisco Superior Court (approximately 44 plaintiffs);

23.     *Audie Dadus, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532380, San Francisco Superior Court (approximately 91 plaintiffs);

24.     *Raymond Esche, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532408, San Francisco Superior Court (approximately 90 plaintiffs);

25.     *James Fields, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532388, San Francisco Superior Court (approximately 91 plaintiffs);

26.     *Wilma Hargrove, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532389, San Francisco Superior Court (approximately 90 plaintiffs);

27.     *Latresha Harrison, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532397, San Francisco Superior Court (approximately 45 plaintiffs);

28.     *Osey Joshlin, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532414, San Francisco Superior Court (approximately 45 plaintiffs);

29.     *Eva Lamb, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532400, San Francisco Superior Court (approximately 89 plaintiffs);

30.     *Samona Myers, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532398, San Francisco Superior Court (approximately 45 plaintiffs);

31.     *Elizabeth Pacheco, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532405, San Francisco Superior Court (approximately 36 plaintiffs);

32.     *Frank Pandolfo, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532402, San Francisco Superior Court (approximately 90 plaintiffs);

33.     *Melissa Poff, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532413, San Francisco Superior Court (approximately 44 plaintiffs);

34.     *Carlie Spiers, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532387, San Francisco Superior Court (approximately 90 plaintiffs);

35.     *Sylvia Summa, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532403, San Francisco Superior Court (approximately 73 plaintiffs);

36.     *Ronald Travis, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532390, San Francisco Superior Court (approximately 53 plaintiffs);

37.     *Joanne West, et al. v. McKesson Corporation, et al.*, Case No. CGC-13-532410, San Francisco Superior Court (approximately 26 plaintiffs).

Michael K. Brown (SBN 104252)
Email: mkbrown@reedsmith.com
REED SMITH LLP
355 South Grand Avenue
Suite 2900
Los Angeles, CA 90071-1514
Telephone: +1 213 457 8000
Facsimile: +1 213 457 8080

Sonja S. Weissman (SBN 154320)
Email: sweissman@reedsmith.com
Steven J. Boranian (SBN 174183)
Email: sboranian@reedsmith.com
REED SMITH LLP
101 Second Street
Suite 1800
San Francisco, CA 94105-3659
Telephone: +1 415 543 8700
Facsimile: +1 415 391 8269

Attorneys for Defendant
GlaxoSmithKline LLC (formerly known as
SmithKline Beecham Corporation d/b/a
GlaxoSmithKline)

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

**CV 13 3069**

AUDIE DADUS, MAXINE DAVIS,
THEODORA DELEO, EMILIO DESIMONE,
AURELIO DIAZ, ROSALYN DORSEY-
FRANKLIN, FLOZELL FIELDS, ANDREW
FIORINI, JAMES FLEMING, ALISON
FLORNOY- MINGO, DANIEL FOSTER,
ARTHUR GAUDET, DORA GREEN, CARL
HAGAN, GEORGE HARLE, AMPARO
HERNANDEZ, VESTINE HESTER, THOMAS
HILFERTY, SHERRY HILLS, LILLIAN
HOLLANDER, JANICE HOPKINS, WILLIE
HUNTER, CAROL JENKS, LILLIE JOHNSON,
PATRICIA JOHNSON, JOEL KAIZER, ROGER
KESTEL, SHERRIE LAPORTE, PATRICK
LAUDERDAL, RICHARD LITTLE, JAMES
MORGAN, GARY MUNTZ, DELOURDES
OQUENDO, KENNETH PATTERSON, MARY
PEARSON, DONALD PEASE, SHEENA
PRICE, LENA RHYM, MILLIE RICHARDSON,
RANDOLPH RINZ, CONSTANCE ROBINSON,
JOSEPH ROBINSON, ROY RODGERS,
WILLIAM ROGERS, RODOLFO SANTAYA,
DEBORA SELVIDGE, NATHAN SESSUM,
DANIEL SHORT, FRANCES STORY,
EVELYN SWITECKI, VIRGINIA TAYLOR,
MARGARET THORNTON, TOM TIORGETTI,

Case No.

**CERTIFICATE OF SERVICE**

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  JOAN TRADITI, CORDELLA TYRE, ROBERT
   WENSEL, JAMES WILLIAMS, NORRINE
2  WILLIAMS, DOUGLAS YODER, GARRETT
   ANFIELD, LOUISE BOWDEN, JACK
3  BROWN, ERNESTINE BUTTS, CHARLES
   CUMMINGS, JUDITH ETHERIDGE, DIXIE
4  GANN, EDWARD GREEN, DOROTHY
   HARRIS, THOMAS JAMES, DEBORAH
5  MARTIN, RONALD MENTZER, LYNETTE
   ROBINSON, KATHY SANCHEZ, LARRY
6  SHERWOOD, MARGARET WILKERSON,
   CHARLES BRUMLEY, WALTER NEWSOM,
7  ZUBEDA AHMED, RONALD BROWN,
   ALLAN BURKE, MELVIN CHANEY,
8  EDWARD COTTON, RUSSELL DUNN,
   VERNE HARRIS, SAMUEL HUNT, ESTHER
9  NEWSOME, MARY SMITH, FRED THOMAS,
   CARL WATKINS, TIMOTHY WHALEN, and
10 GENEVA CLEMENS,

11          Plaintiffs,

12     vs.

13 MCKESSON CORPORATION, A
   CORPORATION, SMITHKLINE BEECHAM
14 CORPORATION D/B/A GLAXOSMITHKLINE,
   and DOES 1 THROUGH 100, Inclusive,

15          Defendants.

16
17
18
19
20
21
22
23
24
25
26
27
28

CERTIFICATE OF SERVICE

# CERTIFICATE OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is REED SMITH LLP, 101 Second Street, Suite 1800, San Francisco, CA 94105. On July 2, 2013, I served the following document(s) by the method indicated below:

## SEE ATTACHED LIST

☐   by transmitting via facsimile on this date from fax number +1 415 391 8269 the document(s) listed above to the fax number(s) set forth below. The transmission was reported complete and without error. The transmission report was properly issued by the transmitting fax machine. Service by fax was made by agreement of the parties, confirmed in writing. The transmitting fax machine complies with Cal.R.Ct 2003(3).

☑   by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing of correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in this Declaration.

☐   by placing the document(s) listed above in a sealed envelope(s) and by causing personal delivery of the envelope(s) to the person(s) at the address(es) set forth below.

☐   by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐   by placing the document(s) listed above in a sealed envelope(s) and consigning it to an express mail service for guaranteed delivery on the next business day following the date of consignment to the address(es) set forth below.

☐   by transmitting via email to the parties at the email addresses listed below:

Sin-Ting Mary Liu
Law Offices of Sin-Ting Mary Liu
806 East Avenida Pico, Suite I-218
San Clemente, CA 92673
Telephone: 949-342-4555
Fax: 760-304-8933
singtingmliu@gmail.com

I declare under penalty of perjury under the laws of the United States that the above is true and correct. Executed on July 2, 2013, at San Francisco, California.

_Linda A Pringle_
Linda I. Pringle

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

CIVIL COVER SHEET

NOTICE OF REMOVAL BY DEFENDANT GLAXOSMITHKLINE LLC UNDER 28 U.S.C.§§ 1332 AND 1441(B)

DEFENDANT GLAXOSMITHKLINE LLC'S (FORMERLY KNOWN AS SMITHKLINE BEECHAM CORPORATION D/B/A GLAXOSMITHKLINE) RULE 7.1 CORPORATE DISCLOSURE STATEMENT

DEFENDANT GLAXOSMITHKLINE LLC'S (FORMERLY KNOWN AS SMITHKLINE BEECHAM CORPORATION D/B/A GLAXOSMITHKLINE) NOTICE OF PENDENCY OF OTHER ACTIONS OR PROCEEDINGS

DEFENDANT GLAXOSMITHKLINE LLC'S (FORMERLY KNOWN AS SMITHKLINE BEECHAM CORPORATION D/B/A GLAXOSMITHKLINE) CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

DEMAND FOR JURY TRIAL

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 3 –